Jan MARTIN, Independent Executrix
of the Estate of Gary Martin,
Appellant,

v.

MARTIN, MARTIN & RICHARDS,
INC., and Roneal Martin,
Appellees.

No. 2–96–112–CV.

Court of Appeals of Texas,
Fort Worth.

May 29, 1997.

Bishop, Payne, Williams & Werley, L.L.P., Thomas J. Williams, Fort Worth, for Appellant.

Law, Snakard & Gambill, Ed Huddleston, Dabney D. Bassel, Lynn M. Johnson, Fort Worth, for Appellee.

Panel A: CAYCE, C.J.; HOLMAN, J., and H. TOD WEAVER, J. (Retired) (Sitting by Assignment).

## OPINION

H. TOD WEAVER, Justice (Retired).

This is an appeal from a summary judgment in favor of appellees, Martin, Martin and Richards, Inc. ("MMR"), and Roneal Martin ("Roneal"), defendants below,

against Gary Martin, ("Gary") plaintiff below. The case involves a breach of contract claim filed by Gary against MMR and Roneal under a contract signed by Gary, Roneal, and Floyd O. Richards, on February 29, 1988.

Gary filed this suit against MMR on October 9, 1992. MMR filed its original motion for summary judgment on August 26, 1993. Roneal was named as an additional defendant in the suit on August 31, 1993. A supplemental motion for summary judgment was filed by MMR and Roneal on October 29, 1993. On November 2, 1993, the trial court signed an order granting the defendants' motions for summary judgment. Gary filed his response to the supplemental motion for summary judgment on November 4, 1993, and leave for filing that response was granted on November 15, 1993.

The order granting defendants' motion for summary judgment became final and appealable on February 20, 1996. After the order granting defendants' motion for summary judgment was signed, and while the case was still pending before the trial court, Gary died on June 29, 1994, and this appeal was perfected by appellant, Jan Martin, the Independent Executrix of the Estate of Gary Martin, deceased.

Appellant brings two points of error. Under point one, she claims the trial court erred in granting appellees' motion for summary judgment. The principal issue addressed by us under this point is whether Gary's breach of contract claims in the present lawsuit were barred by *res judicata* as a result of the dismissal of a prior lawsuit with prejudice. Under point two, appellant claims, in the alternative, that the trial court erred in granting Roneal's motion for summary judgment because there was no hearing on said motion, or, alternatively, Gary had no notice or insufficient notice of a hearing on that motion. We overrule both points of error and affirm the judgment of the trial court.

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of a material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Cate v. Dover Corp.,* 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, *Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301–02 (Tex.1990), and all doubts about the existence of a genuine issue of a material fact are resolved against the movant. *Cate,* 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.,* 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995); *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex. 1984). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.,* 391 S.W.2d at 47.

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995); *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 537 (Tex.1975). To accomplish this, the defendant-movant must present summary judgment evidence that negates an element of plaintiff's claim. Once evidence is presented, the burden shifts to the plaintiff to put on competent controverting evidence that proves the existence of a genuine issue of material fact with regard to the element challenged by

the defendant. *Centeq Realty,* 899 S.W.2d at 197.

The defendant-movant may also succeed by pleading and conclusively establishing each element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *Muckelroy v. Richardson Indep. Sch. Dist.,* 884 S.W.2d 825, 828 (Tex. App.—Dallas 1994, writ denied). Again, once a movant has established a right to summary judgment, the burden shifts to the nonmovant to present any evidence that would prevent summary judgment. *Id.*

When, as in this case, a trial court's order granting summary judgment does not specify the grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced by the movant are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989); *Martin v. Southwestern Elec. Power Co.,* 860 S.W.2d 197, 198 (Tex.App.—Texarkana 1993, writ denied).

### Res Judicata

Point of error one concerns the question of whether Gary's claims for breach of contract in the present case were barred by *res judicata.* Appellees listed some 13 grounds in support of their motions for summary judgment, one of which involved a claim that Gary's claims for recovery under the contract in the present suit were barred by *res judicata* because of an order of dismissal with prejudice that was entered in a prior lawsuit in which Gary, as intervenor, sought declaratory relief.[1]

■ *Res judicata* bars relitigation of claims that were brought or could have been brought in an earlier case involving the same parties (or their privies) and the same subject matter. *Soto v. Phillips,* 836 S.W.2d 266, 268 (Tex.App.—San Antonio 1992, writ denied) (op. on reh'g). *Res judicata,* or claim preclusion, is predicated

on several policies. The policies behind the doctrine reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery. *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 629 (Tex. 1992). In determining what claims are barred by *res judicata,* Texas has adopted what is known as the "transactional" approach. *Id.* at 630–31. To determine whether or not a subsequent claim is barred by *res judicata* requires:

> A determination of what constitutes the subject matter of a suit necessarily requires an examination of the factual basis of the claim or claims in the prior litigation. It requires an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action. Any cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit.

*Id.* at 630.

■ Judgment on a declaratory judgment action also bars subsequent prosecution on the same cause of action. *See Ortega v. First RepublicBank Fort Worth,* 792 S.W.2d 452, 456 (Tex.1990) (op. on reh'g); *Segrest v. Segrest,* 649 S.W.2d 610, 612 (Tex.), *cert. denied,* 464 U.S. 894, 104 S.Ct. 242, 78 L.Ed.2d 232 (1983); *MJR'S Fare of Dallas v. City of Dallas,* 792 S.W.2d 569, 571–72 (Tex.App.—Dallas 1990, writ denied) (op. on reh'g); and *Brown v. Scherck,* 393 S.W.2d 172, 179 (Tex.Civ.App.—Corpus Christi 1965, no writ).

We will now review the contract, the causes of action alleged by Gary in his plea in intervention in the prior lawsuit, and the causes of action he alleged in the present lawsuit, with respect to how they bear on

---

1. A contention was also made under both the original motion and supplemental motion for summary judgment filed by MMR and Roneal, that Gary's claims under the contract were barred by *collateral estoppel.* Appellees have abandoned their *collateral estoppel* arguments by stating in their brief that they do not rely upon that doctrine as a bar to such claims.

the *res judicata* arguments of MMR and Roneal.

## The Contract

The contract on which Gary sued was an instrument entitled "Agreement to Sell and Purchase" (the "Contract"), dated February 29, 1988, and signed by Gary, Floyd Richards, and Roneal. Although that instrument does not so indicate, it is undisputed that the three parties who signed the Contract were the sole shareholders, directors, and principal officers of MMR, and owned the stock of MMR in approximately equal proportions. The Contract was not signed by MMR and the same does not name MMR as a party. Pertinent portions of the contract provided:

- Gary Martin sells and conveys all of his right, title and interest in MMR to MMR.
- Upon the execution of the Contract, Gary Martin shall have no further interest in the business or in any of the assets of the business, whether as owner, creditor, lessor, bailor or otherwise, and that Floyd Richards and Roneal Martin may continue to conduct the business free of any claim or interest by Gary Martin, except that Gary Martin shall retain an interest in a life insurance policy insuring his life and in two automobiles as shown.
- It is agreed that Gary Martin shall be retained by MMR as a consultant at the monthly rate of $10,833.33 per month for a period of ten years, payable bi-monthly on the 1st and 15th of each month, beginning March 1, 1988.
- In consideration of the transfer, Gary Martin shall be paid $200,000.00 at the rate of $1,667.67 per month for a period of ten years, payable bi-monthly on the 1st and 15th of each month, beginning March 1, 1988.
- Roneal Martin and Floyd Richards shall pay and discharge, as and when due, all debts, liabilities and obligations of every and any kind and character which have arisen or which may hereafter arise out of the partnership of C.C. & Co. and MMR, or the conduct of either business, whether such debts, liabilities and obligations are absolute or contingent, and known or unknown.
- All businesses shall be continued without any winding up or termination.
- This agreement contains the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior understandings and agreements, written or oral, relating to such subject matter.

## The Prior Lawsuit

At some time, after the Contract was signed on February 29, 1988, Roneal and Floyd Richards became involved in litigation in the 236th District Court of Tarrant County, regarding the affairs of MMR. The full extent of the conflict between them is not reflected by the record before us. However, it is clear that Gary filed a plea in intervention in that action in October, 1991, against Roneal, Floyd Richards, MMR and a number of other parties. That lawsuit was compromised and settled and an order of dismissal with prejudice was entered as to all parties. The causes of action plead by Gary in his plea of intervention in the prior lawsuit, coupled with the dismissal of that suit, form the basis of the *res judicata* claims of MMR and Roneal.

Gary, by his intervention in the prior lawsuit, alleged two causes of action. Under the first cause, he sought a declaratory judgment against MMR under the Texas Uniform Declaratory Judgments Act, Chapter 37, Texas Civil Practice & Remedies Code (the "Act"). TEX. CIV. PRAC. & REM.CODE ANN. §§ 37.001–.011 (Vernon 1986 & Supp.1997). The plea in intervention generally described the operations and ownership of MMR, the facts surrounding the execution of the Contract by Gary, Roneal, and Floyd Richards on February 29, 1988, and the price to be paid for

Gary's shares thereunder. The following are other pertinent portions of that cause of action as alleged by Gary in his plea in intervention:

> In entering into the Contract, Gary sold his one-third interest in MMR to MMR.
>
> In executing the Contract, Floyd Richards and Roneal Martin were acting individually and on behalf of MMR as its officers, directors and shareholders.
>
> Payment to Gary (for his one-third interest in MMR) was comprised of two items: (1) a purchase price of $200,000.00, payable at the rate of $1,667.67 per month for a period of ten years, payable bi-monthly on the 1st and 15th of each month, beginning March 1, 1988; and (2) an agreement of MMR to retain Gary as a consultant at the monthly rate of $10,833.33 per month for a period of ten years, payable bi-monthly on the 1st and 15th of each month, beginning March 1, 1988.
>
> All payments to Gary due to date have been made by MMR, except for one bi-monthly payment totaling $6,250.50.
>
> As of October 25, 1991, MMR owed Gary an unpaid balance of $127,456.35 on the purchase price and an unpaid balance of $828,749.74 in connection with the consulting agreement.
>
> Gary has an interest in the matter in controversy in that MMR is indebted to Gary in the total amount of $956,206.09, and, as a result of the present controversy, the parties have questioned the validity of the indebtedness of MMR to Gary under the Contract.
>
> Gary is a person interested under a written contract and is entitled to obtain a declaration of rights, status and other legal relations thereunder.
>
> Pursuant to Texas Civil Practice and Remedies Code section 37.004, the agreement may be construed either before or after there has been a breach.
>
> There is a justiciable controversy among the parties.
>
> Gary is entitled to a declaration of his rights under the Contract.

Gary then requested the trial court in the prior suit to declare that the Contract was a legal and binding obligation between him and MMR. He did not specifically plead that MMR had breached the Contract and did not seek judgment for damages against MMR for breach of contract or otherwise. However, he did allege that MMR was indebted to him under the Contract in the amount of $956,206.09, and further that the parties had questioned the validity of the indebtedness owing by MMR to him under the Contract. He then asked the trial court to declare that the Contract was a legal and binding obligation between him and MMR.

By his second cause of action in the intervention, Gary conditionally sought to have a constructive trust imposed on assets of MMR in the event that its assets were "spun-off" as a result of actions taken by Roneal and Floyd Richards. Other than the conditional remedy which he requested, Gary sought no remedy or judgment against either MMR, Roneal, or Floyd Richards under that cause of action.

### The present law suit

Gary filed this suit against MMR on October 9, 1992. On August 2, 1993, he filed his second amended original petition. On August 26, 1993, MMR filed its motion for summary judgment seeking summary judgment against Gary. At that time, Gary's live pleading consisted of his second amended original petition and MMR was the only named defendant in the lawsuit.

#### Second Amended Original Petition

The second amended original petition generally described the Contract and the facts surrounding its execution in the same manner as those matters were described in the plea in intervention that was filed in the prior lawsuit, including allegations regarding the purchase price for Gary's stock in MMR; the terms of payment by MMR for his stock; and the amount paid

thereon and the balance owing to Gary under the Contract at that time. It alleged that Roneal and Floyd Richards executed the Contract on behalf of MMR, as its officers, directors, and shareholders, and thus that MMR executed the Contract and that the same was a binding obligation and contract of MMR. It further alleged that the Contract was not ambiguous; that Gary had transferred his stock to MMR by endorsing in blank a certificate representing his stock and delivering it to MMR on February 29, 1988; and that MMR had breached the Contract by failing to make the installment payments on the purchase price when due and had also anticipatorily breached the Contract as to the remaining payments. Gary requested judgment against MMR for payment then due on the Contract in the amount of $831,250.00, and alternatively for all sums which were unpaid and due to him under the Contract at the time of trial.

That petition also contained allegations that Gary had performed all terms and conditions required of him under the Contract and that the Contract did not require him to perform any consulting duties, as the parties did not contemplate or require that he perform such services for MMR.

### Fourth Amended Original Petition

On August 31, 1993, Gary filed his third amended original petition that named Roneal as an additional defendant in the case. On September 8, 1993, he filed his fourth amended original petition, which included both MMR and Roneal as defendants, and the same constituted his live pleading during the remainder of the case.

*Claims against MMR:* Generally, the facts alleged and the damages and recovery sought by Gary against MMR in his fourth amended original petition are the same as those contained in his seconded amended original petition as outlined above. However, the fourth amended original petition does assert some additional grounds as to why MMR was a party to

and was bound by the Contract. It makes reference to a Buy–Sell Agreement executed by the parties on September 1, 1980, by which any stockholder wishing to sell his MMR stock was required to sell such stock to MMR, and alleges that, pursuant to that agreement, the three shareholders were delegated the right to determine the purchase price of the stock, and further that they agreed to a purchase price for Gary's stock of $1,500,000.00. It said MMR did not execute the Contract because under the Buy–Sell Agreement it was not permitted to participate in the determination of the purchase price of the stock. It also alleged that MMR accepted and ratified the Contract. The petition then seems to refer to the Buy–Sell Agreement and the Contract as constituting one agreement under which MMR was obligated to pay Gary for his stock in the amounts reflected by the Contract. Those are the same sums that Gary claimed, by his plea of intervention in the prior suit, were owing to him by MMR under the Contract, and as to which alleged obligation of MMR he sought a declaration of the trial court.[2] He also alleged that MMR breached the terms of both of those instruments. As claimed in his second amended original petition, Gary plead, in his fourth petition, that the Contract was not ambiguous, and also that the Buy–Sell Agreement was not ambiguous.

By his fourth petition, Gary also sought recovery against MMR for unjust enrichment, restitution, and implied contract. With respect to those claims he alleged that: there was a fiduciary relationship among Gary, Roneal, Floyd Richards, and MMR; Gary transferred the stock in MMR for MMR's benefit; he confirmed a direct benefit on MMR by transferring his stock to it; MMR is estopped to deny that it is bound by the Contract; the reasonable fair value of the stock he transferred to MMR was $1,500,000.00, and the reasonable fair value of the stock that MMR

---

2. Appellant contends in her brief that these two documents must be construed together.

has not paid him for is $831,250.00; MMR will be unjustly enriched in the amount of $831,250.00 if allowed to retain the benefit conferred on it without payment to Gary of the reasonable fair value of the stock; Gary is entitled to payment and restitution from MMR in that amount; it would be grossly inequitable and would create a fraud on Gary by allowing MMR to receive the stock and not pay Gary the reasonable fair value therefor, of which $831,250.00 remains unpaid; and that because of the facts alleged, there is an implied contract between MMR and Gary that requires MMR to pay Gary the sum of $831,250.00.

*Claims against Roneal Martin:* By his fourth amended original petition, Gary alleged, alternatively, that: Roneal executed the Buy–Sell Agreement and the Contract in his individual capacity; such agreements constitute a binding contract between Gary and Roneal by which Roneal agreed that he would cause MMR to make the payments to Gary which the Buy–Sell Agreement and the Contract required; after Roneal became the sole shareholder and controlling officer and director of MMR on July 13, 1992, he breached the Buy–Sell Agreement and the Contract by failing to cause MMR to continue making payments to Gary and by causing MMR to cease making such payments to Gary; Roneal has anticipatorily breached and totally repudiated the Buy–Sell Agreement and the Contract, and has evidenced his renunciation of such agreements; and that Roneal's breach of contract has damaged Gary in the amount of $831,250.00.

Gary then asked for judgment against MMR and Roneal, jointly and severally, in the principal amount of $831,250.00, or, alternatively, for all sums which are unpaid and due Gary under the Buy–Sell Agreement and the Contract at the time of trial.

### Order of Dismissal of the Prior Lawsuit

The prior lawsuit was compromised and settled as evidenced by a Compromise Set-tlement Agreement and Release signed by Roneal and Floyd Richards, individually, and by Roneal as vice president of MMR on July 13, 1992. The settlement agreement was not signed by Gary, but it is undisputed that there was attached to that agreement a proposed order of dismissal with prejudice which was approved as to form and substance by both Gary and his attorney prior to the time the order of dismissal was submitted to and signed by the trial judge in that case on July 14, 1992. The style of the case, as shown on that order, listed Roneal, MMR and various other parties as Plaintiffs; Floyd Richards and various other parties as Defendants; and Gary as the Intervenor. The order contained the following language:

On this day came on to be heard the above-entitled and numbered cause. All parties appeared by and through their respective attorneys of record and announced to the Court that it was their desire to dismiss the claims which they had, each against the other, with prejudice, with costs of court to be taxed against the party incurring same.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that all costs of court incurred in this matter shall be charged against the party incurring same.

It is obvious that such order did not contain decretal language dismissing the lawsuit. However, on October 15, 1992, the Judge of the 236th District Court signed an Order of Dismissal Nunc Pro Tunc in that case, which included the language of the prior order as well as the following additional language:

it is, therefore

ORDERED, ADJUDGED, AND DECREED that all causes of action which were brought, or which could have been brought, by Plaintiffs, Defendants, and Intervenor, each as to the others, should be, and the same hereby are, dismissed with prejudice to the refiling of same....

One of the questions raised in this case is whether the 236th District Court's dismissal of the prior lawsuit with prejudice amounted to such disposition of the controversies between the parties so as to bar Gary's claims in the present lawsuit under the doctrine of *res judicata.* Appellant presents several arguments in support of her contention that it did not.

Appellant does not dispute the fact that the prior suit was dismissed with prejudice. Likewise, she does not contest the validity of the nunc pro tunc dismissal order. She claims, rather, that the same merely corrected a clerical error in the order of dismissal dated July 14, 1992; the July 14th dismissal order, as corrected, remained the judgment of the trial court; and the dismissal of the prior suit was effective as of that date, July 14, 1992.

■ Appellant then claims, since Gary did not allege breach of contract and did not seek damages for breach of contract in his interpleader action, and because MMR continued to make the monthly payments under the Contract up to and after July 14, 1992, that Gary was not barred, under the doctrine of *res judicata,* from recovering in the second lawsuit on a breach of contract action, where the breach occurred after the first suit was dismissed. We reject that argument. As Gary acknowledged in his intervention, an agreement may be construed under the Act, either before or after there has been a breach.[3]

Appellant also claims that the issue of MMR's liability under the Contract was not brought into issue in the prior lawsuit, and that such issue, even with due diligence, could not have been placed in issue in that suit because, at the time the prior suit was dismissed on July 14, 1992, MMR had not defaulted on the Contract. Her argument that *res judicata* does not apply, because there was no breach of contract at the time the prior suit was dismissed, has been previously addressed and rejected by us, as discussed above.

Gary alleged, in the intervention, that on October 25, 1991, MMR was indebted to him under the Contract in the amount of $956,206.09; and that there was a justiciable controversy among the parties. He then specifically asked the trial court to declare that the Contract was a legal and binding obligation between him and MMR. We find that the allegations made by Gary, in the plea of intervention, clearly placed into issue in that case the question of whether MMR was obligated to him under the Contract. That same question, whether MMR was obligated to pay Gary under the Contract, was certainly one that the trial court, in the present case, would necessarily have had to address in determining whether Gary was entitled to recover damages against MMR for breach of the Contract. Appellant's argument that the issue of MMR's liability under the Contract was not brought into issue in the interpleader action is rejected.

■ Appellant concedes that under the Act a declaration has the force and effect of a final judgment or decree. She then claims the order of dismissal with prejudice in the prior suit was not a declaration, and, because that order did not "declare" anything, the same does not bar her claims in the present suit. For this proposition, appellant relies upon *Kaspar Wire Works, Inc. v. Leco Eng'g and Mach., Inc.,* 575 F.2d 530, 535 (5th Cir.1978). That argument too is rejected.

Under Texas law it is well established that a dismissal with prejudice functions as a final determination on the merits. *Mossler v. Shields,* 818 S.W.2d 752, 754 (Tex. 1991). For the same proposition, *see Rodebaugh v. Beachum,* 576 S.W.2d 143, 146–47 (Tex.Civ.App.—Waco 1979, writ

3. The intervention shows that MMR had not made one of the bi-monthly payments that Gary claimed was to be paid under the Contract. However, no specific claim was made that MMR had breached the Contract and no recovery was sought on any breach. Accordingly, we do not consider the issue of whether MMR had breached the Contract prior to the dismissal of the prior suit to be controlling.

ref'd n.r.e.). The San Antonio Court of Appeals held, to the same effect, in *America's Favorite Chicken Co., v. Galvan,* 897 S.W.2d 874, 878 (Tex.App.—San Antonio 1995, writ denied), which involved a non-suit dismissal, when it stated that orders of nonsuit or dismissals with prejudice constitute adjudication on the merits and that a written order granting a motion for nonsuit, and which dismisses the entire case, represents a written judgment entered of record regardless of whether an adjudication on the merits has occurred. *Id.* In *Bill Hart Auto Sales, Inc. v. Comerica Bank–Texas,* 893 S.W.2d 705, 708 (Tex.App.—Eastland 1995, no writ), the Eastland Court of Appeals held that a bank customer's claim against the bank, regarding incorrectly deposited checks, was barred by *res judicata* where the customer had settled its claims in a previous law suit which was then dismissed with prejudice. Based on those Texas cases, we hold that the order of dismissal with prejudice in the prior suit was a final decree in that case, and that the same barred Gary from relitigating the issue of MMR's liability under the Contract in the present lawsuit. We hold the trial court did not err in granting MMR's motion for summary judgment on the ground of *res judicata.* Point of error one is overruled with respect to the summary judgment granted to MMR, and the summary judgment in favor of MMR is affirmed.

Gary, by his action against Roneal in the present suit, alleged a contract between them by which Roneal agreed that he would cause MMR to make the payments to Gary as required by the Contract and the Buy–Sell Agreement. He then claimed that Roneal breached those agreements by failing to cause MMR to continue making payments to Gary and by causing

MMR to cease making payments to him. Obviously, Gary sought judgment against Roneal only for such sums as may have been owing to Gary by MMR under the Contract. We have held above that the dismissal of the prior suit barred Gary's claims against MMR under the Contract. Thus, Gary is barred from showing that any sums are owing by MMR to him under the Contract, and accordingly his claims against Roneal are likewise barred. Point of error one is overruled with respect to the summary judgment granted to Roneal, subject, however, to our disposition of point of error two.

### Complaints of No Hearing—No Notice

■ Under point of error two, appellant claims, in the alternative, that the trial court erred in granting Roneal's motion for summary judgment because there was no hearing on said motion, or, alternatively, Gary had no notice or insufficient notice of a hearing on that motion.[4]

MMR's motion for summary judgment was filed on August 26, 1993, and a hearing thereon was set for September 17, 1993. The record does not reflect that an oral hearing was held on that date. Nor is there anything in the record to reflect that a continuance was requested or ordered by the court. However, on October 29, 1993, MMR and Roneal filed a supplemental motion for summary judgment. Because Roneal did not join in MMR's previously filed motion for summary judgment, and in fact was not a party to the suit at that time, the supplemental motion amounted to an original motion for summary judgment by Roneal, and as to which Gary was entitled to the notice of hearing as mandated by rule 166a(c). *See Sams v. N.L. Industries, Inc.,* 735 S.W.2d 486, 488 (Tex.App.—

---

4. Appellant, reciting these same reasons, also claims the trial court erred in granting summary judgment to MMR on any grounds asserted by it for the first time in its supplemental motion for summary judgment. Because we have affirmed the summary judgment as to MMR under the doctrine of *res judicata,*

and because the same was urged by MMR as a ground for summary judgment under its original motion, we need not address these arguments as they regard MMR. Our discussion under point of error two is accordingly restricted to the issues bearing on Roneal's motion for summary judgment.

Houston [1st Dist.] 1987, no writ); TEX.R. CIV. P. 166a(c).

Summary judgment proceedings are governed by rule 166a of the Rules of Civil Procedure. Except on leave of court, with notice to opposing counsel, a motion for summary judgment and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing, and, without leave of court, the adverse party, not later than seven days prior to the day of hearing, may file and serve opposing affidavits or other written response. TEX.R. CIV. P. 166a(c). The rule makes no other specific reference to notice.

■ The nonmovant's right under rule 166a(c) is to have minimum notice of the hearing on the summary judgment motion. *Lewis v. Blake,* 876 S.W.2d 314, 315 (Tex. 1994). The purpose of the twenty-one day notice provision is to give the party opposing the summary judgment a full opportunity to respond on the merits. *Stephens v. Turtle Creek Apartments, Ltd.,* 875 S.W.2d 25, 26 (Tex.App.—Houston [14th Dist.] 1994, no writ). In particular, the notice provisions of the rule are intended to prevent the rendition of a judgment without the opposing party having a full opportunity to respond on the merits. *Bell v. Showa Denko K.K.,* 899 S.W.2d 749, 759 (Tex. App.—Amarillo 1995, writ denied).

■ Because summary judgment is a harsh remedy, the notice requirements of the rule must be strictly construed. *Stephens,* 875 S.W.2d at 26; *Sams,* 735 S.W.2d at 487. Such construction applies to the application of rules of procedure as well as to substantive matters. *International Ins. Co. v. Herman G. West, Inc.,* 649 S.W.2d 824, 825 (Tex.App.—Fort Worth 1983, no writ). The rule must be strictly construed against the movant. *Lee v. McCormick,* 647 S.W.2d 735, 738 (Tex.App.—Beaumont 1983, no writ). The movant must comply with all the requirements of rule 166a before being entitled to summary judgment. *Guinn v. Zarsky,*

893 S.W.2d 13, 17 (Tex.App.—Corpus Christi 1994, no writ).

We will review appellant's complaints regarding the lack of a hearing, insufficient notice of hearing, and the complete lack of any notice of hearing, regarding Roneal's motion for summary judgment.

■ Oral hearings on a motion for summary judgment are not necessary, and it is not error for a trial court to rule based solely on the written submissions. *Owen Elect. Supply, Inc. v. Brite Day Constr., Inc.,* 821 S.W.2d 283, 288 (Tex. App.—Houston [1st Dist.] 1991, writ denied). The summary judgment rule does not mandate an oral hearing in all cases. *Gordon v. Ward,* 822 S.W.2d 90, 92 (Tex. App.—Houston [1st Dist.] 1991, writ denied). Also, under TEX.R.APP. P. 52(a), a party who fails to object at the trial level about the lack of oral hearing on a motion for summary judgment waives that complaint, and because such complaint does not present a jurisdictional question, it may not be raised for the first time on appeal. *Gordon,* 822 S.W.2d at 91–92. Thus, appellant's complaint that no hearing was held on Roneal's motion for summary judgment is without merit.

■ An allegation that a party received less notice than required by statute does not present a jurisdictional question and therefore may not be raised for the first time on appeal. *Bell,* 899 S.W.2d at 759; *White v. Wah,* 789 S.W.2d 312, 319 (Tex.App.—Houston [1st Dist.] 1990, no writ); *Delta (Delaware) Petroleum & Energy Corp. v. Houston Fishing Tools Co.,* 670 S.W.2d 295, 296 (Tex.App.—Houston [1st Dist.] 1983, no writ); *see also Longoria v. United Blood Services,* 907 S.W.2d 605, 609 (Tex.App.—Corpus Christi 1995), *rev'd on other grounds,* 938 S.W.2d 29 (Tex.1997); *Lara v. Lile,* 828 S.W.2d 536, 542 (Tex.App.—Corpus Christi 1992, writ denied); *Rozsa v. Jenkinson,* 754 S.W.2d 507, 509 (Tex.App.—San Antonio 1988, no writ). Appellant's complaint that Gary received insufficient notice of a hearing on

Roneal's motion for summary judgment is not applicable to the facts of this case and is thus without merit because Gary received no notice at all.

■ We now address appellant's complaint that Gary received no notice whatsoever showing a setting of a hearing on Roneal's motion for summary judgment. Attached to the supplemental motion for summary judgment (which constitutes Roneal's motion for summary judgment) is a certificate showing that a true and correct copy of the motion was hand-delivered to Gary's attorney on October 29, 1993. The record does not show that a certificate of notice of the hearing on the motion was attached thereto. Thus, appellant's claim that no notice of a hearing was given is supported by the record. See *Guinn*, 893 S.W.2d at 17. Roneal submits no argument to the contrary and makes no claim that a rule 166a(c) notice was given respecting his motion for summary judgment.

Appellant cites *Bell*, 899 S.W.2d at 759, for the proposition that the failure of the movant to provide any notice of a hearing deprives the trial court of jurisdiction to hear the motion. Appellant's claim is apparently based upon the following language in *Bell:* "A failure to receive any notice of a hearing on a motion for summary judgment places in question the trial court's jurisdiction to hear the motion." *Id.* The *Bell* opinion, however, does not reflect a ruling by the Court to that effect, and the quoted language is merely dictum. The issue there was whether the appellant had waived an allegation that she had received "less than" the required notice. In overruling her point of error, the Court said that an allegation that a party received "less than" the required notice does not raise a jurisdictional question and may be waived. *Id.*

However, we believe appellant's contention that the failure of the movant to pro-

vide any notice deprives the trial court of jurisdiction to hear the motion, is supported by other Texas cases. Accordingly, a summary judgment granted without such notice must be reversed unless the issue is waived by the nonmovant.

*Mosser v. Plano Three Venture*, 893 S.W.2d 8 (Tex.App.—Dallas 1994, no writ), involved a situation, much like the present case, where the nonmovant in a summary judgment proceeding received no notice of the hearing on the motion. The appellant filed a motion for new trial claiming the summary judgment must be reversed because he received no notice of the hearing. The appellant complained on appeal that the trial court erred in overruling his motion for new trial by which he claimed the summary judgment must be reversed because he received no notice of the hearing on the motion. The appellees contended the trial court properly overruled the motion for new trial because the appellant did not satisfy the meritorious defense requirements for obtaining a new trial under *Craddock.*[5] The Dallas Court of Appeals rejected that contention and reversed the judgment of the trial court. In doing so, the Court used the following language:

An elementary and fundamental requirement of due process in any proceeding that is to be accorded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections thereto. *Peralta*, 485 U.S. at 84, 108 S.Ct. at 898–99. The failure to give adequate notice violates the most rudimentary demands of due process of law. *Peralta*, 485 U.S. at 84, 108 S.Ct. at 898–99.

*Id.* at 12. The Court went on to quote the following from *Peralta:*[6]

As we observed in *Armstrong v. Manzo*, 380 U.S. [545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965) ], only "wip[ing] the slate clean . . . would have restored the petitioner

---

5. *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939).

6. *Peralta v. Heights Medical Ctr., Inc.*, 485 U.S. 80, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988).

to the position he would have occupied had due process of law been accorded to him in the first place." The Due Process Clause demands no less in this case. *Id.* at 13.

*Mosser* clearly illustrates the fundamental rights of a party to receive notice of the pendency of an action sufficient to afford him the opportunity to respond.

*Guinn,* 893 S.W.2d at 13, also involved a situation in which the nonmovant in a summary judgment proceeding received no notice of the hearing on the motion. The appellant filed no response to the motion for summary judgment and did not attend any hearing thereon. The appellee's motion for partial summary judgment was granted on January 21, 1992. The appellant filed a motion for new trial based on the lack of notice of the hearing. The appellant then complained on appeal of the trial court's refusal to grant the motion for new trial. The appellate court made reference to requirement for a party to show a meritorious defense as a condition to granting his motion for new trial, and then cited *Peralta,* 485 U.S. at 85–87, 108 S.Ct. at 899–900, 99 L.Ed.2d at 81–82, for the proposition that such requirement, in the absence of notice, violates a party's Fourteenth Amendment due process rights. The Corpus Christi Court of Appeals then held the trial court erred in failing to grant appellant's motion for new trial and reversed the judgment of the trial court.

In the present case, Roneal's motion for summary judgment was filed on October 29, 1993. Gary received no notice of a hearing on the motion. Nevertheless, four days later, on November 2, 1993, without Gary having filed a response to the motion or making an appearance regarding the same, the trial court signed an order granting Roneal's motion for summary judgment. We hold, under the circumstances of this case and in the absence of any notice of the hearing having been given to Gary, that the trial court did not have authority to grant Roneal's motion for summary judgment on November 2, 1993, and that the signing of the order

granting summary judgment on that date was error. Accordingly, appellant's second point of error must be sustained and the summary judgment in favor of Roneal must be reversed, unless, as contended by Roneal, such error was waived by Gary.

 Roneal does not dispute appellant's claims that Gary received no notice of the hearing on Roneal's motion for summary judgment. He claims, rather, that the objection was waived. It is undisputed that appellant's complaint regarding the lack of notice of a hearing on Roneal's motion for summary judgment was not raised at the trial level and is raised for the first time on this appeal. Appellant claims the lack of notice constituted a jurisdictional defect that deprived the trial court of jurisdiction to hear Roneal's motion for summary judgment. Appellant's complaint, regarding lack of jurisdiction, does not attack the trial court's subject matter jurisdiction, which can not be waived. Rather, it concerns the trial court's lack of jurisdiction to render judgment against Gary because of lack of proper service of process on him regarding Roneal's motion for summary judgment.

A judgment can not be rendered against a person unless upon service, or acceptance or waiver of process, or upon appearance by that person, as provided in the rules of civil procedure, except where otherwise expressly provided by law or those rules. *See* Tex.R. Civ. P. 124. Appearance in a case, however, constitutes waiver of service of process. *Dodson v. Seymour,* 664 S.W.2d 158, 161 (Tex.App.—San Antonio 1983, no writ).

 We believe compliance of the mandatory notice requirements of rule 166a(c) is necessary in order to constitute service of process on a nonmovant in a summary judgment proceeding. However, the service of that notice too can be waived, either by a specific waiver by the nonmovant or by his appearance and participation in the summary judgment proceedings. *See CIGNA Ins. Co. v. TPG Store, Inc.,* 894 S.W.2d 431, 434 (Tex.App.—Austin 1995, no writ). This is particularly true where

the nonmovant did not appear solely for the purpose of raising a jurisdictional issue, files a response to the motion for summary judgment and seeks judgment or adjudication on some question. *Id.* The procedural facts in the present case are similar to those in *CIGNA*. Gary received no notice of the summary judgment hearing, did not raise a jurisdiction issue at the trial level, and filed a response to the motion by which he requested the trial court to deny the same.

■ Appellant seems to argue that waiver is not applicable in this case because the trial court's order approving Roneal's motion for summary judgment, dated November 2, 1993, was signed only four days after the motion was filed. But two days later, on November 4, 1993, Gary filed his response to the motion. The trial court can only consider pleadings and proof on file at the time of the summary judgment hearing, or filed after the hearing before judgment with permission of the court. *Hussong v. Schwan's Sales Enter., Inc.,* 896 S.W.2d 320, 323 (Tex.App.—Houston [1st Dist.] 1995, no writ) (op. on reh'g). The allowing of a late filed response in summary judgment proceedings is within the discretion of the trial court. *See Harvey v. Alexander,* 671 S.W.2d 727, 729 (Tex.App.—Fort Worth 1984, no writ). Leave for the filing of Gary's response was granted by an order of the trial court dated November 15, 1993. That order also indicated that Gary's response was received and considered for all purposes, and that, after having considered such response, the trial court's prior determination that Roneal's motion for summary judgment should be granted remained correct in all respects.

Gary also filed other documents in the case after his response was filed. On November 12th he requested the trial court to file findings of fact and conclusions of law, which request was refused by a letter by the court date November 15th. On November 17th Gary filed his motion for new trial which was denied by order dated December 21st. By motion to reconsider

filed on January 3, 1994, Gary asked the trial court to modify its judgment to reflect that Roneal's motion for summary judgment be overruled. On December 29, 1995, appellant, Jan Martin, filed a motion to reconsider the summary judgment or in the alternative a motion for new trial and for a scheduling order. Her amended motion to reconsider was filed on February 12, 1996. Those motions, filed by Jan Martin, were overruled by the trial court on February 20, 1996. None of the above listed motions filed by Gary or by Jan Martin raised a jurisdictional issue or complained of the lack of a rule 166a(c) notice regarding a hearing date on Roneal's motion for summary judgment. Under these circumstances, where Gary filed a response, sought rulings of the trial court regarding Roneal's motion for summary judgment, and raised no complaint at the trial level regarding a lack of notice, we hold that such complaint was waived and that appellant can not complain of the same for the first time on this appeal. Point of error two is overruled.

The summary judgments granted in favor of Martin, Martin and Richards, Inc. and Roneal Martin are affirmed.