

# In the Missouri Court of Appeals Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| JOHN N. PARKE, | ) | No. ED108358 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | 19SL-CC00661 |
| | ) | |
| | ) | |
| PROGRESSIVE CASUALTY | ) | |
| INSURANCE COMPANY, | ) | Honorable Stanley J. Wallach |
| | ) | |
| Respondent. | ) | FILED: June 16, 2020 |

## OPINION

John N. Parke ("Parke") appeals from the judgment of the trial court granting summary

judgment in favor of Progressive Casualty Insurance Company ("Progressive") in Parke's suit

for fraudulent misrepresentation. On appeal, Parke asserts that there remained genuine issues of

disputed material fact, and also that the trial court erred in finding Parke had no private right of

action under the Registration and Licensing of Motor Vehicles Chapter of the Missouri Revised

Statutes ("the salvage statutes"). We reverse and remand for further proceedings in accordance

with this opinion.

## Background

In November 2018, Parke purchased a 2013 Nissan Sentra ("the Sentra") from Doxa

Auto, LLC ("Doxa"). Parke subsequently noticed damage to the vehicle and obtained an

AutoCheck report, which revealed the Sentra had been reported in an accident in August 2018,

and that after the accident, Progressive had purchased the Sentra. The AutoCheck report indicated, as relevant to the issues raised on appeal, that the Sentra had been reported as an "insurance loss or probable total loss record" following a "major damage incident," but that it had "no salvage or salvage auction record."

Parke obtained counsel and sent a letter to Progressive, requesting information about the extent of the damage to the Sentra. Parke informed Progressive that if it had declared the Sentra a "salvage" vehicle, Progressive was required to apply for a salvage certificate of title. Parke notified Progressive that if Progressive did not respond to the letter, Parke would assume the Sentra was a salvage vehicle and that Progressive should have applied for a salvage title. Progressive did not respond to Parke's letter.

Parke filed suit against Doxa and Progressive. As to Progressive, Parke alleged fraudulent misrepresentation. Parke asserted that Progressive had declared the Sentra to be a salvage vehicle, which it had purchased from the insured as a result of a settlement resulting from the August 2018 accident, and thus Progressive had breached its duty under Section 301.227, RSMo.,[1] to obtain a negotiable salvage certificate of title from the Director of Revenue ("DOR"). Parke further claimed that as a result of Progressive's actions, Parke sustained damage.

Progressive filed a motion to dismiss Parke's claim of fraudulent misrepresentation against Progressive, asserting that Parke had not pled a basis upon which Progressive owed him a duty, in that the statute does not create a private right of action, but rather that Section 301.229 provides for enforcement only by the DOR. Progressive submitted an affidavit from its manager of claims attesting that Progressive had not declared the Sentra to be a salvage vehicle. Because

---

[1] All statutory references are to RSMo. (cum. supp. 2018), unless otherwise indicated.

2

Progressive's memorandum in support of its motion to dismiss included matters outside the pleadings, the trial court converted Progressive's motion to dismiss into one for summary judgment pursuant to Rule 55.27(a). Parke responded there was a genuine issue of material fact whether Progressive had declared the Sentra to be a salvage vehicle before applying for a non-salvage certificate of title from the DOR.

The trial court granted Progressive's motion for summary judgment, concluding that Parke could not maintain an action against Progressive because the salvage statutes created neither an express nor an implied private right of action; rather, the statute's language providing for enforcement by the DOR and criminal punishment was penal and thus contrary to an individual right of action. After concluding Parke had no private right of action, the trial court decided it need not reach the issue of whether there existed a dispute of material fact regarding whether Progressive had declared the Sentra a salvage. The trial court entered judgment against Parke and in favor of Progressive. This appeal follows.

Standard of Review

Appellate courts review de novo a trial court's grant of summary judgment. *ITT Commercial Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We will affirm the grant of summary judgment if no genuine issues of material fact exist, and the movant is entitled to judgment as a matter of law. *Id.* at 377. We review the record in the light most favorable to the party against whom judgment was entered. *Id.* at 376.

Discussion

Parke raises two points on appeal. First, he argues the trial court erred in granting summary judgment to Progressive because there was a genuine issue as to whether Progressive's description of the Sentra in its internal claims file as a "total loss" and a "salvage" constituted a

3

declaration that the Sentra was a "salvage vehicle" as defined by Section 301.010(53),[2] thereby triggering Progressive's mandatory obligation to apply for a salvage title under Section 301.227.1. Second, he argues the trial court erred in granting summary judgment to Progressive after concluding Parke had no private right of action against Progressive under Section 301.227.1. We address the points out of order, for ease of analysis.

## Point II

In Parke's second point on appeal, he argues the trial court erred in granting summary judgment to Progressive when it held that Parke's action sought to directly enforce Section 301.227.1, for which there was no private right of action; instead, Parke contends his action was based on the common law claim of fraudulent misrepresentation, for which the duty element was triggered by Progressive's violation of Section 301.227.1. We agree.

Parke here asserted a common law claim against Progressive for fraudulent non-disclosure, which in Missouri falls under the rubric of fraudulent misrepresentation. *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. banc 2007); *Richards v. ABN AMRO Mortgage Group, Inc.*, 261 S.W.3d 603, 607 (Mo. App. W.D. 2008). For a claim of fraudulent non-disclosure, liability arises from a party's silence "where the law imposes a duty to speak." *Hess*, 220 S.W.3d at 765. Whether or not there exists a duty to disclose is determined by the facts of each individual case. *Id.*

Parke asserted as the basis for Progressive's liability that it remained silent about the Sentra's status as a salvage vehicle in the face of its statutory duty to disclose this status imposed by Section 301.227.1. Section 301.227.1 provides that:

---

[2] We use the statute in effect at the time the petition was filed. *See Walsh v. Walsh*, 184 S.W.3d 156, 157 (Mo. App. E.D. 2006). When Parke commenced this action, the salvage vehicle definition was found in Section 301.010(53), RSMo. (cum supp. 2018).

4

> Whenever a vehicle is sold for salvage …, the purchaser shall forward to the director of revenue within ten days the certificate of ownership of salvage certificate of title … and the director shall issue a negotiable salvage certificate of title to the purchaser of the salvaged vehicle. On vehicles purchased during a year that is no more than six years after the manufacture's model year designation for such vehicle, it shall be mandatory that the purchaser apply for a salvage title.

Parke claimed that the Sentra met the definition of a salvage vehicle as provided in Section 301.010(53)(c), in that it was "declared salvage by an insurance company as the result of settlement of a claim." In support, he pointed to Progressive's internal claim file, in which Progressive characterized the Sentra as a "total loss" and a "salvage," settled the claim with the prior owner, applied for a non-salvage certificate of title for the Sentra from the DOR in its own name, and then sold the Sentra at auction through a company specializing in the sale of salvage vehicles.

For the purposes of Point II on appeal, we do not consider whether Progressive's actions constituted a "declaration" of salvage under the statutes; rather, we consider solely the issue of whether a common law claim can arise in part from a violation of Section 301.227. We find that it can.

In general, when a statute includes measures establishing enforcement of its provisions, courts will not recognize a private right of action for the violation of that statute, except where the statute indicates legislative intent to establish a private cause of action. *See Dierkes v. Blue Cross and Blue Shield*, 991 S.W.2d 662, 667 (Mo. banc 1999); *Johnson v. Kraft Gen. Foods, Inc.*, 885 S.W.2d 334, 336 (Mo. banc 1994). Separately, when a plaintiff sues not for the defendant's violation of the statute itself, but instead for a common law claim existing independently of the statute, such as fraud or negligence, then the action may proceed even though violation of the statute is an element of the common law claim. *See Dierkes*, 991 S.W.2d

5

at 668. "[A] statutory right of action shall not be deemed to supersede and displace remedies otherwise available at common law in the absence of language to that effect unless the statutory remedy fully comprehends and envelopes the remedies provided at common law." *Id.* (citation omitted). Common law remedies are intended to enforce individual rights stemming from individual misconduct, even where that misconduct originated in the tortfeasor's failure to follow its statutory duties. *See id.*

Thus, the key issue here is whether the statutory remedy in the salvage statutes fully comprehended and enveloped the remedies provided at common law, foreclosing a common law claim. We find it did not, leaving space for an action in common law claiming harm from private misconduct. Here, Section 301.229 provides that "[t]he director of revenue or his or her representative, including … designated employees of the Missouri highway patrol shall administer and enforce the provisions of 301.217 to 301.229." Section 301.229.2. Likewise, Section 301.229 provides that a violation of Section 301.227 constitutes a class A misdemeanor, subject to criminal penalties as provided by law. Section 301.229.1.

Parke did not bring suit claiming a private right of action under the statute itself. Rather, Parke here sought remedy for fraudulent non-disclosure, which falls under the common law claim of fraudulent misrepresentation, asserting Progressive failed to disclose the Sentra's status as a salvage vehicle despite its statutory obligation to do so under Section 301.227.1, resulting in damages to Parke. To make a submissible claim of fraudulent non-disclosure, Parke had to prove, *inter alia*, Progressive remained knowingly silent about something it had a duty to disclose. *See Hess*, 220 S.W.3d at 765. Section 301.227 here imposed a duty upon any purchaser of a salvage vehicle to apply for a salvage certificate of title, and thus if Progressive purchased a savage vehicle and then knowingly failed to apply for a salvage title, this statutory

6

violation supplied the duty element for the fraudulent misrepresentation claim made by Parke. *See id.* (liability for fraudulent non-disclosure arises from party's silence "where the law imposes a duty to speak").

The language of Section 301.229 does not explicitly prohibit common law remedies stemming from violations of Section 301.227, nor does Section 301.229 set forth any civil remedies that "fully comprehend[] and envelope[] the remedies provided at common law." *Compare Dierkes*, 991 S.W.2d at 668 (allowing common law action for breach of contract and fraud stemming from insurance company's violation of statute prohibiting changing rates without approval from Missouri Department of Insurance where prescribed statutory penalties allowed for suspension of insurer's license) *with Johnson*, 885 S.W.2d at 336 (finding prescribed statutory penalties of reinstatement and back wages adequately protected interests of employee harmed by employer's violation of statute prohibiting discharge due to wage-withholding orders). Similar to *Dierkes*, the penalty set forth here in Section 301.229 provides only criminal penalties and is not adequate to address the civil interests of individuals harmed by a purchaser's failure to comply with the salvage statutes.

Moreover, Missouri courts have already determined that the failure to comply with Section 301.227.1 can form the basis for liability in a subsequent suit for negligence. *See O'Brien v. B.L.C. Ins. Co.*, 768 S.W.2d 64, 67-69 (Mo. banc 1989). In *O'Brien*, the Missouri Supreme Court held that common law negligence liability could attach from an insurance company's failure to comply with the relevant statutory salvage requirements. *Id.* at 67. Specifically, the court noted that when an insurance company fails to comply with salvage and odometer statutes, improper conduct by a person who may later come into possession of the certificate of title is foreseeable. *Id.* at 68-69. The purpose of the salvage title requirements is to

7

inform subsequent purchasers of the vehicle's title history and, more broadly, to prevent damaged vehicles from ending up in the hands of unsuspecting downstream consumers. *See id.* at 67; *see also Baugus v. Dir. of Revenue*, 878 S.W.2d 39, 41 (Mo. banc 1994). Salvage title requirements are intended to prevent exactly what Parke asserted occurred here: Progressive failed to comply with the salvage title requirements, allowing Doxa to sell Parke a damaged vehicle without disclosing its salvage history.[3] Under precedent established in *O'Brien*, Parke can pursue a common law claim against Progressive for its failure to act in the manner it was required to by law, which opened the door for Doxa's foreseeable improper conduct. *See O'Brien*, 768 S.W.2d at 67-69. Therefore, we find the trial court erred in granting Progressive's motion for summary judgment.

Point II is granted.

## Point I

In his first point on appeal, Parke argues the trial court erred in granting summary judgment in favor of Progressive because there was a genuine issue as to whether Progressive's description of the Sentra in its internal claim file as a "total loss" and a "salvage" constituted a declaration that the Sentra was a "salvage vehicle" as defined by Section 301.010(53), thereby triggering Progressive's mandatory obligation to apply for a salvage title under Section 301.227.1. We agree.

Section 301.227.1 provides that "[w]henever a vehicle is sold for salvage …, the purchaser shall forward to the director of revenue within ten days the certificate of ownership or salvage certificate of title … and the director shall issue a negotiable salvage certificate of title to the purchaser of the salvaged vehicle." A vehicle is salvage for purposes of the statute when it

---

[3] Parke asserted in his petition that Doxa's advertisement represented the Sentra was "well maintained" and had "no issues whatsoever." Based upon these and other representations, Parke purchased the Sentra.

meets one of the five definitions set forth in Section 301.010(53). Parke claimed the Sentra met the definition of a salvage vehicle under subsection (c): namely, when the vehicle "has been declared salvage by an insurance company as a result of a settlement claim." Section 301.010(53)(c).

This Court is limited to the record presented on appeal. In his petition, Parke claimed Progressive had declared the Sentra a salvage vehicle as a result of an accident and had purchased the Sentra to settle the claim, but did not then apply for a salvage certificate of title. Progressive filed a motion to dismiss, which the trial court converted into a motion for summary judgment, based in relevant part on an affidavit from James Kimmel ("Kimmel"), its manager of claims, attesting Progressive had not declared the Sentra to be a salvage vehicle. Parke responded with exhibits, attaching Progressive's claim file, in which Progressive referred to the Sentra as a "salvage" and a "total loss." Progressive's claim file also indicated it had forwarded the Sentra to the salvage unit for processing, which had labeled the title as clean, not salvage or junk. Progressive countered with a second affidavit from Kimmel attesting that the terms "salvage" and "total loss" were terms of art in the insurance industry, and that by using those terms, Progressive had not "declared" the Sentra a salvage vehicle within the meaning of the salvage statutes.

On these facts, there is a genuine dispute over the material fact of whether Progressive "declared" the Sentra a salvage or a total loss, and thus Progressive was not entitled to judgment as a matter of law. *See Hargis v. JLB Corp.*, 357 S.W.3d 574, 581 (Mo. banc 2011). Parke requests that this Court determine on the limited facts before us whether Progressive's internal notations that the Sentra was a salvage and a total loss constituted a "declaration." However, Progressive has attested through affidavit that the terms "salvage" and "total loss" are terms of

9

art within the insurance community with specific meanings: namely, a "salvage" is damaged property an insurer receives to reduce its loss after paying a claim, and "total loss" refers to the insurer's decision to pay the total value of the vehicle. We decline to decide the veracity of Progressive's defense, leaving to the finder of fact a decision on the credibility of Progressive's averments. While we acknowledge Parke's concerns of judicial economy, a decision on the limited facts here would be premature.

Because we find here that Parke could pursue a common law claim against Progressive for harm stemming from Progressive's alleged failure to follow its statutory obligation, the trial court erred in granting summary judgment in favor of Progressive. Progressive was not entitled to summary judgment as a matter of law, and we remand to the trial court for further proceedings.

Point I is granted.

### Conclusion

We reverse the trial court's grant of summary judgment in favor of Progressive and remand for further proceedings in accordance with this opinion.

_____
Robin Ransom, Judge

James M. Dowd, P.J., and Gary M. Gaertner, Jr., J., concur.