Savannah **BELL**, Appellant,

v.

**SHOWA DENKO K.K. d/b/a Showa Denko; Showa Denko America, Inc. d/b/a Showa Denko; Whole Foods, Inc.; Fitness Foods, Inc.; Roy's Nutrition Center, Inc. and Makers of Kal, Inc., Appellees.**

No. 07–94–0138–CV.

Court of Appeals of Texas, Amarillo.

May 17, 1995.

Rehearing Overruled June 23, 1995.

Kathleen Rolston Robbins, Houston, for appellant.

Cleary, Gottlieb, Steen & Hamilton, Matthew D. Slater, Julie A. Waddell, Washington, DC, and Strasburger & Price, Rowland Foster, Mark M. Donheiser and Dennis L. Roossien, Jr., Dallas, for Showa Denko, Fitness Foods, Roy's Nutrition and KAL.

Small, Craig & Werkenthin, Susan L. Moore, Austin, for Whole Foods.

Before REYNOLDS, C.J., and BOYD and QUINN, JJ.

BOYD, Justice.

Appellant Savannah Bell brings this appeal from a take-nothing summary judgment in favor of appellees Showa Denko K.K. d/b/a Showa Denko, Showa Denko America, Inc. d/b/a Showa Denko, Whole Foods, Inc., Fitness Foods, Inc., Roy's Nutrition Center, Inc. and Makers of KAL, Inc. In three points of error, she urges the trial court erred in 1) granting appellees' motions for summary judgment based on the statute of limitations as a genuine issue of material fact existed as to when appellant knew, or should have known, of her injury and its cause; 2) granting appellees' motions for summary judgment based on the statute of limitations as a class action of which appellant was a putative member had been filed, thereby tolling the running of the limitations; and 3) denying appellant's "Motion to Quash and Object to Oral Hearing of Defendants' Motion for Summary Judgment or in the Alternative to Continue Defendants' Oral Hearing on Motion for Summary Judgment with Proper Notice to Plaintiff" due to the lack of proper notice for the summary judgment hearing. For reasons later expressed, we affirm the judgment of the trial court.

This appeal arises from a suit filed on September 16, 1992, in which appellant sought recovery for injuries she attributes to her ingestion of the dietary supplement L–Tryptophan (L–T). As a result of her intake of L–T, appellant alleges she contracted a condition known as Eosinophilia Myalgia Syndrome, or EMS. EMS is marked by high eosinophil counts and typically gives rise to numerous physical problems including rashes, swelling, achiness in joints and, most predominantly, severe muscle pain. EMS has been linked to an impurity in certain batches of L–T manufactured by Showa Denko, K.K., an entity which, although named as a party defendant, was never served with citation. The remainder of the appellees allegedly either formulated, bottled and/or sold the substances. In her suit, appellant alleged a right to recover under theories of negligence, strict liability, misrepresentation, breach of warranty, and violations of the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA).[1]

On September 27, 1993, after extensive discovery, appellees Showa Denko America, Inc., Fitness Foods, Inc., Roy's Nutrition Center, Inc., and the Makers of KAL, Inc., filed for summary judgment on the basis that appellant's suit was not timely filed. Appellee Whole Foods, Inc. filed a companion motion on October 7, 1993. On October 13, 1993, appellant responded to the motions.

---

1. Tex.Bus. & Com.Code Ann. §§ 17.41–.63 (Vernon 1987 & Supp.1995).

Additional facts concerning the court settings for hearing the summary judgment motions will be made in our discussion of appellant's third point.

Our discussion of appellant's first point requires that we recite the litany of the axiomatic standards for reviewing a summary judgment. As articulated in the seminal case of *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546 (Tex.1985), those standards are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Id.* at 548–49.

▇▇▇ For a defendant to be entitled to a summary judgment, it must disprove, as a matter of law, at least one of the essential elements of each of the plaintiff's causes of action, *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991), or it must establish one or more of its defenses as a matter of law. *Bryant v. Gulf Oil Corp.,* 694 S.W.2d 443, 445 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.). Therefore, the issue on an appeal from a summary judgment is whether the movant established its entitlement to summary judgment, as a matter of law, by conclusively proving that no genuine issue of material fact exists as to its cause of action or a defense. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983). Evidence favorable to the movant's position will be considered only if it is uncontroverted. *Billman v. Missouri Pacific R. Co.,* 825 S.W.2d 525, 526 (Tex. App.—Fort Worth 1992, writ denied).

▇▇▇ In her first point, as we have noted above, appellant argues her claims are not barred by statutes of limitation. Appellant's tort claims are governed by section 16.003 of the Texas Civil Practice and Remedies Code which provides that "a person must bring suit for ... personal injury ... not later than two years after the day the cause of action accrues." Tex.Civ.Prac. & Rem.Code Ann. § 16.003(a) (Vernon 1986). For the purposes of this section, negligence claims normally accrue when the duty of ordinary care is breached, *Zidell v. Bird,* 692 S.W.2d 550, 554 (Tex.App.—Austin 1985, no writ), and strict liability claims generally accrue on the date of the injury. There is a "discovery" exception to the general rule which we will discuss in more detail below. Indeed, the gravamen of appellant's challenge, under this first point, is that the discovery rule is applicable and that she supplied the trial court with sufficient summary judgment evidence to show "that she did not know and could not have known of her injury until a later time" within the limitations period.

▇▇▇ With regard to appellant's DTPA claims, the discovery rule is statutorily included in the two-year limitation period applicable to such claims. Section 17.565 of the DTPA specifically provides:

All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice.

Tex.Bus. & Com.Code Ann. § 17.565 (Vernon 1987). That limitations period is also applicable to claims arising from an alleged breach of warranty. *McAdams v. Capitol Products Corp.,* 810 S.W.2d 290, 292 (Tex. App.—Fort Worth 1991, writ denied).

Because of the nature of this challenge, appellees' discussion of this point primarily addresses, albeit without conceding that the discovery rule is applicable, their assertions that even if the discovery rule is applicable, appellant's suit is still time barred. Thus, in addressing this point, we will assume the discovery rule is applicable and will direct our discussion to the sufficiency of the summary judgment evidence to establish that appellant's suit was not timely filed.

▇▇▇ The discovery rule provides that the limitation period for a tort claim involv-

ing an injury of which the plaintiff could not, and did not, know at the time it occurred, does not begin to run until the injury done to the plaintiff is discovered, or until the party acquires knowledge of facts which, in the exercise of reasonable diligence, would lead to the discovery of the injury. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990); *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988); *Neagle v. Nelson,* 685 S.W.2d 11, 12 (Tex.1985). It is not necessary that a party know the details of the evidence by which to establish his cause of action for it is enough that he knows a cause of action exists in his favor. When a party does so learn of the existence of the cause of action, he must avail himself of those means which the law provides for prosecuting or preserving the claim. *Hoover v. Gregory,* 835 S.W.2d 668, 671 (Tex.App.—Dallas 1992, writ denied). Thus, the discovery rule expressly mandates that the plaintiff exercise reasonable diligence to discover facts of negligence or omission. *Willis,* 760 S.W.2d at 644.

■■■ Because of the discovery rule's requirement of reasonable diligence, the tolling of the applicable statute of limitation by the rule ends when the person claiming the benefit of the rule acquires knowledge of facts, conditions, or circumstances which would cause a reasonable person to make an inquiry leading to the discovery of the concealed cause of action. This is so because the knowledge of such matters is, in the law, equivalent to knowledge of the cause of action itself for limitation purposes. *Bayou Bend Towers Council of Co-Owners v. Manhattan Construction Co.,* 866 S.W.2d 740, 747 (Tex.App.—Houston [14th Dist.] 1993, writ denied). Therefore, the question to be determined is not whether a plaintiff has actual knowledge of the particulars of a cause of action, *Arabian Shield Development Co. v. Hunt,* 808 S.W.2d 577, 583 (Tex.App.—Dallas 1991, writ denied); rather, it is whether the plaintiff has knowledge of facts which would cause a reasonable person to diligently make inquiry to determine his or her legal rights. That knowledge triggers the two-year period of time within which the plaintiff must investigate and determine whether to file suit.

For example, in *Coody v. A.H. Robins Company, Inc.,* 696 S.W.2d 154 (Tex.App.— San Antonio 1985, writ dism'd by agr.), the plaintiff discovered in 1972 that she had been injured by the use of an intrauterine device (IUD). However, she did not discover until 1979 that the device in question was a Dalkon Shield and she did not file suit until 1980. In holding the suit was time barred, the court noted:

> We do not agree with plaintiff's contention that the limitation period began to run only in 1979, when she discovered that the IUD in question was a Dalkon Shield and that it was defectively designed. The discovery rule speaks only of discovery of the injury. It does not operate to toll the running of the limitation period until such time as plaintiff discovers all of the elements of a cause of action. Once appellant learned that she had been injured, the burden was on her to determine whether she should file suit.

*Id.* at 156. We find the *Coody* court's explication of a plaintiff's duty of inquiry to be cogent and instructive in considering the circumstances of this case. We do note appellant's reliance on the court's statement in *Vesecky v. Vesecky,* 880 S.W.2d 804 (Tex. App.—Dallas 1994, writ granted), that whether a plaintiff discovered, or should have discovered, an injury is a question of fact which should be submitted to the trier of fact. However, that statement should be considered in the context of the facts of that case which were clearly insufficient to establish that question as a matter of law. If the holding in that case is interpreted as a statement by the court that the question of discovery must always, without exception, be submitted to the trier of fact, we respectfully differ.

■■■ In examining the summary judgment evidence in this case, we note that appellant stated, in her deposition, that she first became aware of EMS and its apparent relation to L–T in "late '89 or early '90" by reading about it "in the paper." She explained that the article caught her attention because it discussed the high level of eosinophils which occur in connection with the disease and she had been told by Dr. Bolton in

November 1982, on October 16, 1987, and on February 22, 1984 that she had "high eosinophils all throughout." At the time, she said he was "baffled" as to the cause of her condition. In March 1990, she read that "they took it (L–T) off the shelves" so she decided she needed to go back to Dr. Bolton. About that time, according to the deposition testimony of her adult son Ty Henkel, "She basically showed me what—what they had mentioned as in symptoms and what to look for and how it had matched some of hers. And that's why she thought it was a possibility, and I agree." In affidavit testimony, appellant averred that she "suspected that I might have Eosinophilia Myalgia Syndrome (EMS) when I heard about the EMS epidemic, as the symptoms I had corresponded to the symptoms that the EMS victims had reported, i.e., elevated eosinophils in my blood and severe muscle pains which caused me to be bedridden from October 1989 to about March 1990."

In her affidavit, appellant also averred that during 1990 and 1991, she "went to various doctors trying to ascertain what was wrong with [her] and the possibility that [she] might have this new disease called EMS." Dr. Bolton's notes show that on March 23, 1990, appellant contacted him resulting in the following entry:

> Savannah has been on L-tryptophan for about 12 years. She is concerned that this may be a problem. In fact, this may be true.

In the course of her deposition, appellant stated that the newspaper article she read had listed an EMS hotline which she called several times to find out "what doctors were studying this" and to "see if there was anything being done that might help the pain." She acknowledged that on July 23, 1990, she filled out, in her own handwriting, an 11–page instrument denominated as an "L-tryptophan Eosinophilia–Myalgia Syndrome Patient Data Sheet." In that instrument, she described her use of L–T and, after describing her health "prior to EMS" as excellent, described her symptoms in considerable detail, making a point to note certain health problems she felt were not related to EMS.

In asserting the trial court erred in rendering its judgment, appellant acknowledges she was told by Dr. Bolton in March 1990, as well as by a Dr. Stone in October 1990, that "she possibly had EMS and both suggested she investigate further." However, she posits that she did not believe the doctors' statements would support a cause of action against the defendants because of the other possibilities as to the cause of her condition and she continued "to pursue medical help to determine what her injury might be so that she could be appropriately treated." Thus, she concludes, until she received a definite diagnosis from Dr. McKinley in February 1992, she did not have sufficient knowledge of facts to discover she had a cause of action. We must disagree.

Under the summary judgment testimony we have outlined above, particularly considering appellant's admission that as early as March 1990 and no later than July 1990, she knew of her injury and associated it with her ingestion of L–T, that knowledge was sufficient to trigger the running of the statute of limitations more than two years prior to the September 1992 filing of her lawsuit.

Parenthetically, as we previously noted, appellant's discussion under her first point is limited to the argument that her claims were not barred because of the application of the discovery rule. However, in her action, appellant has also included a claim for breach of warranty. Section 2.725 of the Texas Business and Commerce Code provides that a claim for breach of warranty must be commenced within four years after the cause of action has "accrued." Section 2.725(b) specifically states that:

> (b) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Tex.Bus. & Com.Code § 2.725(b) (Vernon 1994). Although appellant brought claims

for breach of an express warranty, in doing so, she did not identify any warranty that "explicitly extends" to the future.[2] The only bottle of L–T received into evidence contains no such warranties and, as we have noted, appellant failed to identify any warranties explicitly extending to the future in regard to any other bottle of the substance she had purchased.

■■■ In support of its motion for summary judgment, appellee Whole Foods, Inc. offered evidence that it had not sold L–T to appellant within the four years prior to September 16, 1992. In her deposition, appellant identified the last bottle of the substance she had acquired as one under a Nutrition Warehouse brand, lot number 61–590. The bottle was acquired by her mother as a barter arrangement with a friend. Whole Foods, Inc.'s uncontroverted summary judgment evidence was that all bottles of L–T under the Nutrition Warehouse label and with that lot number had been sold and delivered by the end of 1987. Thus, under the summary judgment evidence, all of the products consumed by appellant must have been delivered for sale not later than January 1988. That being so, any express warranty claims by appellant would be barred by the operation of the four-year statute.

■■■ Additionally, appellant has not questioned, under a point of error, the applicability of the four-year statute to her breach of an express warranty claims under a point of error, nor has she briefed such an argument. By her failure to do so, appellant has waived this question. *Belcher v. Belcher*, 808 S.W.2d 202, 206 (Tex.App.—El Paso 1991, no writ), *overruled on other grounds*, 860 S.W.2d 414 (Tex.1993); Tex.R.App.P. 74. For all of the foregoing reasons, we overrule appellant's first point.

The gravamen of appellant's second point challenge is that the statutes of limitation were tolled by the filing of a suit, which she denominates as the "Paulsen Class" suit, in New Mexico on February 14, 1990. She argues that the limitations period was tolled by this suit until January 7, 1993, when the

presiding judge denied certification of the class. Inasmuch as she filed this lawsuit on September 16, 1992, she reasons it was filed during the period of time in which limitations were tolled and thus concludes her suit was not time barred. In advancing her proposition, appellant primarily relies upon the decision of *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). We disagree with her argument for several reasons.

■■■ Initially, appellant first raised the tolling argument based upon *American Pipe* in her motion for new trial and reconsideration filed February 15, 1994, some 92 days after the November 15, 1993 judgment giving rise to this appeal. In her response to the motions for summary judgment, the only question appellant raised was the discovery rule issue discussed above.

Rule 166a(c) of the Texas Rules of Civil Procedure expressly provides:

Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.

In *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979), in considering Rule 166a, the Texas Supreme Court commented that it was not necessary to file an answer or response to contend, on appeal, that the grounds advanced by the movant were insufficient to justify summary judgment. However, the court went on to warn that a non-movant must expressly present to the trial court any reasons he wishes to assert to avoid the movant's entitlement to judgment and must present summary judgment proof when necessary to establish a fact issue. *Id.* at 678. In *Nutchey v. Three R's Trucking Co., Inc.*, 674 S.W.2d 928 (Tex. App.—Amarillo 1984, writ ref'd n.r.e.), this court pointed out that a non-movant may not urge any and every new ground that he can think of as a reason for reversing a summary judgment on appeal, nor can he resurrect grounds that he abandoned at the summary judgment hearing. Additionally, a trial court

---

**2.** The statutory exception is narrowly construed and only applies to situations in which an express warranty is made that "make[s] specific reference to a specific date in the future." *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 548 (Tex.1986).

does not abuse its discretion by refusing to consider pleadings filed subsequent to a hearing on a summary judgment motion without the court's consent, even if they are filed prior to the signing of the judgment itself. *Leinen v. Buffington's Bayou City Service Co.,* 824 S.W.2d 682, 685 (Tex.App.— Houston [14th Dist.] 1992, no writ).

Additionally, appellant did not raise the issue presented by this point in her first motion for new trial filed December 14, 1993. In fact, the question was not raised until she filed her "Motion for Reconsideration and New Trial" on February 15, 1994. Rule 329b(a) of the Texas Rules of Civil Procedure expressly states that a motion for new trial must be filed "prior to or within thirty days after the judgment ... is signed." This provision includes both original and amended motions. Any motion or amendment filed after the expiration of the thirty days is untimely and cannot be considered by the trial court or by an appellate court. *Willacy County Appraisal Review Board v. South Padre Land Co.,* 767 S.W.2d 201, 201 (Tex. App.—Corpus Christi 1989, no writ); *L.B. Foster Co. v. Glacier Energy, Inc.,* 714 S.W.2d 48, 49 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.).

In the argument under this second point, appellant appears to contend that she did not raise the tolling issue earlier because she did not discover facts to support her argument until some time after the summary judgment. However, even assuming arguendo that a late filing may be excused on the basis of newly discovered evidence, appellant failed to meet the requirements necessary to obtain a new trial on that basis.

A movant's mere allegations will not suffice to obtain a new trial on the basis of newly discovered evidence; rather, admissible evidence must be introduced at a hearing on the motion for new trial establishing such essential facts as no prior knowledge on the part of the movant, the prior diligence exercised by the movant and, of course, the nature of the newly discovered evidence. *Holgin v. Texas Employers Insurance Association,* 790 S.W.2d 97, 100–01 (Tex.App.— Fort Worth 1990, writ denied); *Fettig v. Fettig,* 619 S.W.2d 262, 267 (Tex.Civ.App.—

Tyler 1981, no writ). In the absence of a hearing on the motion, nothing is preserved for appellate review. *Fergus v. Fergus,* 547 S.W.2d 51, 54 (Tex.Civ.App.—Eastland 1977, no writ); *Roberts v. Greenstreet,* 593 S.W.2d 119, 121–22 (Tex.Civ.App.—Waco 1979, no writ). No such hearing on the motion was ever held.

Moreover, even if the question was properly preserved for our review, we do not agree with appellant. *American Pipe* concerned a federal antitrust class action suit filed only eleven days before the applicable federal limitation period expired. Class certification was denied because there were too few plaintiffs to justify a class action suit. The United States Supreme Court ruled that "the commencement of the original class suit tolled the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class actions." *American Pipe,* 414 U.S. at 552–53, 94 S.Ct. at 766.

We do not agree that *American Pipe* operates to toll our state statute of limitations. That case involved an interpretation of Rule 23 of the Federal Rules of Civil Procedure and concerned the question of whether a federal statute of limitations was tolled for the purpose of filing a federal claim. Under the doctrine of the hoary case of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny, where a claim is derived from state law, as is appellant's suit, state law governs the tolling of the statute of limitations. *See* 4 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1056 at 179–81 (1969).

Appellant cites *Grant v. Austin Bridge Construction Co.,* 725 S.W.2d 366 (Tex. App.—Houston [14th Dist.] 1987, no writ), as authority for the proposition that Texas courts have held that tolling, such as that in *American Pipe,* would also be effected under the Texas class action provisions. In that case, the court did hold the statute of limitations was tolled pending the decision of whether a class was entitled to certification under Rule 42 of the Texas Rules of Civil Procedure.

The basic premise of the *American Pipe* ruling is that a statute of limitations can be tolled while class allegations are pending, provided the defendant has notice of the type and potential number of the claims against it. *See United Airlines, Inc. v. McDonald,* 432 U.S. 385, 393–94 n. 14, 97 S.Ct. 2464, 2469 n. 14, 53 L.Ed.2d 423 (1977). In *Grant,* the suit involved was filed in a Texas state court by plaintiffs who were a readily discernible group of people claiming injury to certain property rather than personal injury. That distinction is important in determining whether the defendants have received fair notice of the existence of a claim by the filing of a class suit. For us to hold that the filing of a mass personal injury suit, in a federal court, in another state, with the variety of claims necessarily involved in such a case, entitled a plaintiff to a tolling of the limitations period such as in *American Pipe,* would be an extension not warranted by the *Grant* decision and we refuse to do so.

Parenthetically, with regard to the appellees in this case other than Showa Denko America, Inc., even if we accepted appellant's theory of an *American Pipe*-type tolling of limitations, inasmuch as they were not named as defendants in the class action, the tolling theory would not apply to them. *See Issen v. GSC Enterprises, Inc.,* 538 F.Supp. 745, 754 (N.D.Ill.1982); *Chevalier v. Baird Savings Ass'n,* 72 F.R.D. 140, 155 (E.D.Pa. 1976). For each and all of the above reasons, appellant's second point is overruled.

The gist of appellant's third point of error is that the trial court reversibly erred in conducting the October 29, 1993 hearing on appellees' motions for summary judgment because she did not receive the required notice of the hearing. Because of the convoluted sequence of events involved in this proceeding, it is necessary to discuss the chronology in some detail.

Appellees Showa Denko America, Inc., Fitness Foods, Inc., Roy's Nutrition Center, Inc., and Makers of KAL, Inc. filed their summary judgment motion on September 27, 1993 and the hearing on the motion was originally set for October 20, 1993. On October 18, 1993, appellant filed her "Motion of Plaintiff to Quash and Object to Oral Hearing of Defendant's Motion for Summary Judgment." In that instrument, appellant asserted she had not received notice of the hearing on appellees' motion until October 9, 1993, a date short of the 21 days notice required by Rule 166a of the Texas Rules of Civil Procedure. Because of that deficiency, she asked that the oral hearing be "quashed" or, in the alternative, be continued until "a time when Plaintiff has received proper notice of such hearing." On October 29, 1993, she filed what she termed as a "Reurged and Amended" motion to "quash" the hearing on appellees' summary judgment motion or, in the alternative, to continue the hearing until she had received "proper notice."

In that amended instrument, appellant continued to assert she had not received the proper 21–day notice of the hearing on appellees' summary judgment motion and referred to a hearing on the motion conducted on October 20, 1993. At that hearing, according to the amended motion, "it was decided that Plaintiff would be given one week additional time to sign and swear to her affidavit, with the Summary Judgment Hearing continued to October 29, 1993. Plaintiff complied, signing and swearing to her affidavit." The instrument closed with a recitation that appellant "did not waive her objection to insufficient notice to Showa Denko, Et. Al."

The record includes a statement of facts from the hearing held on October 29, 1993 which gave rise to the following colloquy:

THE COURT: All right. This is a hearing on motion for summary judgments, but as I understand, there are some preliminary matters. Obviously, when we get to the motion for summary judgment there's no need for a record, but to the extent there are preliminary matters, we will take those on the record.

APPELLEES' COUNSEL: Yes, your Honor. We were here earlier, and there was an objection that sufficient notice had not been given of the Showa Denko America motion for summary judgment, and that the Whole Foods motion, which was originally set for November 3rd, as I understood it, would both be reset by agreement for hearing today.

I prepared an order. It appears that perhaps I sent it to the old fax number instead of the new fax number and counsel didn't get it. So if we could just agree on the record as to the hearing today, I would appreciate it.

APPELLANT'S COUNSEL: Plaintiff agrees to the hearing today, your Honor, and I think also defendant wanted to hear some pretrial matters in regard to some motions in limine. Is that a portion of today's hearing also?

\* \* \* \* \* \*

APPELLANT'S COUNSEL: Yes, your Honor. Again, as to the—I would reurge the amended *motion to quash* the summary judgment as to Showa Denko due to lack of notice, because my reading of the law says it takes a full 21 days disregarding the day of filing and the day of hearing. So given the testimony of counsel, that's still not 21 days, that's 20, and I just reurge that again. The court overruled it last time, but for purposes of the record and certain purposes of my client, I need another ruling on it.

THE COURT: My ruling is that it's moot now because what we have done is reset this so that everybody had plenty of time. In fact, by agreement of parties, we moved up the Whole Foods summary judgment, which is actually set for next Tuesday, I believe, and by agreement, we moved it to this date. So I believe it to be moot and I'll overrule any objections to proceeding because I believe the parties have agreed to proceed today. All right. Any other preliminary matters?

\* \* \* \* \* \*

APPELLANT'S COUNSEL: Your Honor, the court did allow, and I want to put this on the record, another seven days, another time frame for my client [to] come in and sign a sworn to or at least present to the court a sworn to affidavit for purposes of summary judgment purposes proof, and she did and I put that in the record and the court did allow that.

THE COURT: Yes, that's correct.

After appellees' counsel raised a question about the verification of the affidavit, the following colloquy ensued:

THE COURT: But again, I believe by agreement of all counsel, including Whole Foods' counsel who were here last time although not participating, we agreed that we would move it all up and we would allow her to verify the affidavit that she had previously filed. If she would do that, we would take it for summary judgment purposes; otherwise, we wouldn't.

■■■ The provisions of Rule 166a of the Texas Rules of Civil Procedure, including its notice requirements, are strictly construed because summary judgment is a harsh remedy. In particular, the notice provisions of the rule are intended to prevent the rendition of a judgment without the opposing party having a full opportunity to respond on the merits. *Williams v. City of Angleton,* 724 S.W.2d 414, 417 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *overruled on other grounds,* 876 S.W.2d 314 (Tex.1994); *International Insurance Co. v. Herman G. West, Inc.,* 649 S.W.2d 824, 825 (Tex.App.— Fort Worth 1983, no writ).

■■■ A failure to receive any notice of a hearing on a motion for summary judgment places in question the trial court's jurisdiction to hear the motion. However, an allegation that a party received less than the required notice does not raise a jurisdictional question and may be waived. *Delta (Delaware) Petroleum & Energy Corp. v. Houston Fishing Tools Co.,* 670 S.W.2d 295, 296 (Tex. App.—Houston [1st Dist.] 1983, no writ). Specifically, an agreement to shorten the time period for hearing is sufficient to waive any objection to the shortened time. *Wilhite v. H.E. Butt Co.,* 812 S.W.2d 1, 3–4 (Tex. App.—Corpus Christi 1991, no writ).

■■■ The record of the October 29, 1993 hearing is sufficient to show that appellant had earlier agreed to hear both motions at that time, had filed an affidavit in anticipation of the hearing, and, at the beginning of the hearing, had announced her readiness for the hearing through counsel. It is true that appellant's counsel made a somewhat confusing reference to the motion to quash; howev-

er, that reference was not made in such a way as to repudiate his agreement to the hearing date. It is well established that a party may not lead a trial court into perceived error and then complain about it on appeal. *Kelly v. Cunningham,* 848 S.W.2d 370, 371 (Tex.App.—Houston [1st Dist.] 1993, no writ). Appellant's third point is overruled.

In final summary, all of appellant's points are overruled and the judgment of the trial court affirmed.