L.C., Appellant,

v.

A.D., Appellee.

No. 05–92–02867–CV.

Court of Appeals of Texas,
Dallas.

Oct. 23, 1997.

Debra E. Hunt, Moore & Hunt, Houston,
for Appellant.

B. Prater Monning, III, Monning & Wynne, L.L.P., Dawn E. Estes, Gardere & Wynne, L.L.P., Dallas, for Appellee.

## OPINION ON REHEARING

THOMAS, Chief Justice.

This cause is before the Court on appellee A.D.'s motion for rehearing. We GRANT the motion for rehearing. We VACATE our opinion and judgment of March 21, 1994. This is now the opinion of the Court.

L.C. appeals from the trial court's order granting summary judgment in favor of A.D. on all of L.C.'s claims. L.C. sued her father, A.D., alleging various causes of action stemming from his alleged sexual abuse of her when she was a child. L.C. pleaded delayed discovery of her causes of action. The question before this Court is whether the statute of limitations bars L.C.'s causes of action. We conclude it does and affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

This is an appeal from a summary judgment. In determining whether a material fact issue precluding summary judgment exists, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). This standard requires us to resolve all doubts in favor of the nonmovant and accept as true all evidence favorable to the nonmovant. *Nixon*, 690 S.W.2d at 549. In this case, A.D. moved for and was granted summary judgment on his affirmative defense. Keeping in mind the standards by which we are guided, we review the relevant summary judgment evidence in the light most favorable to L.C., the nonmovant.

L.C. was born in March 1957. Her parents divorced the following year. L.C. alleged that when she was two years old, A.D. performed oral sex upon her and attempted to penetrate her. In 1966, L.C. claimed A.D. had sexual intercourse with her. During a course of psychological treatment in the fall

of 1988 through January 1989, several doctors and therapists asked L.C. if she had been the victim of incest or other sexual abuse. She did not believe she had been, but admitted the questions gave her reason to suspect otherwise. At one time, however, L.C. had no memory of her father sexually abusing her. According to L.C., she did not remember her father's alleged incestuous acts until on or after February 1, 1990, while undergoing therapy with Dr. Gladys Beale–Ganzhorn. L.C. filed her suit against A.D. on December 24, 1991, twenty-five years after the last alleged incident of abuse.

A.D. moved for summary judgment on the grounds that: (1) L.C.'s claims were barred by the two-year statute of limitations for personal injury claims; (2) even if the discovery rule applied to delay accrual of her claims, L.C. knew or should have known of her claims more than two years before she filed suit; and (3) there is no cause of action for the acts alleged in L.C.'s petition. The trial court granted A.D.'s motion for summary judgment without specifying the grounds for its ruling. In three points of error, L.C. claimed the trial court erred in granting summary judgment on the bases that: (1) the discovery rule did not apply to toll the statute of limitations; (2) she knew or should have known the basis of her injury more than two years prior to filing her claims; and (3) she had no cause of action against A.D. On original submission, a divided Court reversed the summary judgment and remanded the cause to the trial court for further proceedings.

In his motion for rehearing, A.D. asserts this Court erred in concluding the discovery rule applied because the facts do not satisfy the *Precision Sheet Metal* factors and there is no objective evidence of abuse. A.D. also asserts that even if the discovery rule applies, he proved discovery more than two years before L.C. filed suit. A.D. also contends this Court erred in refusing to consider his assertions that L.C. had no causes of action for the claims she alleged. L.C. responded that this Court's opinion was correct in concluding that the discovery rule applied and she presented objective evidence of a wrong. L.C. also responded that this Court

properly concluded that the trial court erred in granting A.D. summary judgment on the ground that she knew or should have known of the basis of her injury more than two years before she filed suit and in holding that A.D. did not expressly present his claim regarding L.C.'s causes of action.

## DISCOVERY RULE

### 1. Standard of Review

The standard of review for summary judgment is well established:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon,* 690 S.W.2d at 548–49. Summary judgment is not intended to deprive litigants of their right to a full hearing on fact issues. *Gulbenkian v. Penn,* 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). It is designed to eliminate patently unmeritorious claims or untenable defenses. *Gulbenkian,* 151 Tex. at 416, 252 S.W.2d at 931. The grounds for summary judgment must be presented in the motion itself. *See McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex. 1993). Summary judgment for a defendant is proper when the summary judgment evidence negates an essential element of the plaintiff's cause of action as a matter of law or establishes all elements of an affirmative defense as a matter of law. *See Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex.1990). Where the trial court's judgment does not specify the grounds for its ruling, we may uphold summary judgment on any theory supported by the evidence. *See*

*Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 79 (Tex.1989).

### 2. Statute of Limitations

■ At the time L.C. filed her cause of action, a suit for personal injury had to be brought no later than two years after the date that the cause of action accrued. *See* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3252, *amended by* Act of May 27, 1995, 74th Leg., R.S., ch. 739, § 2, 1995 Tex. Gen. Laws 3850, 3850 (current version at TEX. CIV. PRAC. & REM. CODE § 16.003(a) (Vernon Supp.1997)).[1] Generally, a cause of action for personal injury accrues when the wrongful act effects an injury, regardless of when the victim learns of the injury. *See Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990). The primary purpose of statutes of limitations is to provide defendants with a fair opportunity to defend against lawsuits while witnesses are available and evidence is fresh in their minds by compelling the exercise of rights within a reasonable time. *See Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988).

There is no dispute that because L.C. was under a legal disability until she turned eighteen years of age in March 1975, she had two years from that date to bring her claims against A.D. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.001 (Vernon Supp.1997). L.C. did not bring her claims within that time. Instead, she asserted delayed discovery of her causes of action.

■ The discovery rule is a plea in confession and avoidance; thus, the party seeking to avail itself of the discovery rule must plead it. *See Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 517–18 (Tex.1988). After our initial opinion in this case issued, the supreme court has held that the discovery rule may apply in cases involving allegations of childhood sexual abuse, but that such a determination must be made on a case by case basis. *S.V.* v. *R.V.,* 933 S.W.2d 1, 8 (Tex.1996).[2] If the discovery rule applies, it

1. Effective June 15, 1995, the legislature added section 16.0045 to the Texas Civil Practice and Remedies Code. Section 16.0045 provides that a suit for injuries arising from conduct that violates section 22.011 of the Texas Penal Code (sexual assault) or section 22.021 of the Texas

Penal Code (aggravated sexual assault) must be brought within five years from the date of accrual. Section 16.0045 does not apply to L.C.'s case.

2. *S.V. v. R.V.* involved an appeal following the trial court's granting of a directed verdict.

delays accrual of a cause of action until the plaintiff discovers, or through the exercise of reasonable care and diligence should have discovered, the nature of the injury. *See Moreno*, 787 S.W.2d at 351. A party need not know the details of the evidence by which to establish the cause of action. *Martinez v. Humble Sand & Gravel, Inc.*, 940 S.W.2d 139, 143 (Tex.App.—El Paso 1996, writ granted). It is enough that the party knows a cause of action exists in his or her favor. *Martinez*, 940 S.W.2d at 143. "'Discovery' ... occurs when a plaintiff had knowledge of such facts as would cause a reasonably prudent person to make an inquiry that would lead to discovery of the cause of action." *Hoover v. Gregory*, 835 S.W.2d 668, 671 (Tex. App.—Dallas 1992, writ denied). Thus, the discovery rule expressly mandates that the plaintiff exercise reasonable diligence to discover facts concerning the acts or omissions. *See Martinez*, 940 S.W.2d at 143 (citing *Willis*, 760 S.W.2d at 644). To prevail at summary judgment on the affirmative defense that the statute of limitations has run, the movant must show that there is no genuine issue of fact that the nonmovant discovered, or through the exercise of reasonable diligence should have discovered, the nature of the injury by a certain date and suit was not filed until more than two years after that date. *See Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990).

### 3. Application of Law to Facts

■ One of the grounds on which A.D. moved for summary judgment was that even if the discovery rule did apply, L.C. knew or should have known of her claims more than two years before she filed suit. We will assume, without deciding, that the discovery rule applies as urged by L.C. and, therefore, need not conduct the analysis set out in *S.V.* Nevertheless, we conclude that the statute of limitations bars L.C.'s claims.

In support of his motion, A.D. relied on L.C.'s deposition testimony. L.C. testified that she was seeking psychological counseling during the fall of 1988 into January 1989 from Dr. Gorsuch. At that time, she was aware that some of the physical and emotional problems she experienced were attributed by professionals to incest. She further stated that although she had not yet had any flashbacks by July 1989, she was on notice that there might be sexual abuse in her background. In fact, L.C. testified that before she began therapy with Beale–Ganzhorn, six other therapists had questioned her about sexual abuse or incest, and that she had reason to suspect childhood sexual abuse.

We conclude that A.D.'s summary judgment evidence established that by July 31, 1989, at the latest, L.C. had sufficient information regarding the alleged childhood sexual abuse that would have led a reasonably prudent person to make an inquiry that would have led to the discovery of a cause of action. *See Hoover*, 835 S.W.2d at 671; *see also Martinez*, 940 S.W.2d at 143. Accordingly, we conclude that A.D. met his summary judgment burden of establishing that by July 31, 1989, L.C., through the exercise of reasonable care and diligence, should have been aware of the nature of her injuries. *See Moreno*, 787 S.W.2d at 351; *Willis*, 760 S.W.2d at 644; *Martinez*, 940 S.W.2d at 143. Thus, the burden shifted to L.C. to present controverting evidence to raise a fact issue regarding discovery of her cause of action. This she did not do.

L.C. attached her affidavit to her response to A.D.'s motion for summary judgment. In the affidavit, L.C. stated that during the course of therapy in 1989, several therapists asked if she had experienced childhood sexual abuse, but she did not recall anyone mentioning incest. She further stated that because she had not yet experienced any memories, she had no reason to believe she was the victim of sexual abuse or incest. L.C. did not remember her father's alleged incestuous acts until on or after February 1, 1990, while undergoing therapy with Beale–Ganzhorn.

L.C. also attached Beale–Ganzhorn's affidavit. In the affidavit, Beale–Ganzhorn stated that she was a psychiatrist who began treating L.C. in July 1989. Beale–Ganzhorn diagnosed L.C. as suffering from PTSD, a mental injury resulting from a psychologically traumatic event outside the range of normal human experience. One aspect of PTSD

is repression of the painful memories of the original trauma. During therapy, L.C. began to remember sexual activity with her father. L.C. did not report those memories to Beale–Ganzhorn until after February 1, 1990.

L.C.'s summary judgment evidence does not controvert the evidence presented by A.D. regarding the July 31, 1989 date. The relevant inquiry is not whether a plaintiff has actual knowledge of the particulars of a cause of action but whether a plaintiff has knowledge of facts which would cause a reasonable person to diligently make an inquiry to determine his or her legal rights. *See Martinez,* 940 S.W.2d at 143; *Bell v. Showa Denko K.K.,* 899 S.W.2d 749, 754 (Tex.App.— Amarillo 1995, writ denied); *see also Arabian Shield Dev. Co. v. Hunt,* 808 S.W.2d 577, 583 (Tex.App.—Dallas 1991, writ denied). Moreover, because the standard regarding the discovery rule is whether the plaintiff discovered or, through the exercise of reasonable diligence should have discovered, the nature of the injuries, L.C.'s evidence regarding the date she actually remembered A.D.'s acts is immaterial. *See Moreno,* 787 S.W.2d at 351; *Willis,* 760 S.W.2d at 644.

Thus, we conclude the summary judgment evidence established as a matter of law that L.C. discovered or, through the exercise of reasonable diligence should have discovered, the nature of her injuries by July 31, 1989. Because L.C. did not bring her claims until December 24, 1991, more than two years after that date, the statute of limitations bars them. The trial court did not err in granting summary judgment on A.D.'s second ground. Accordingly, we overrule the second point of error. Because of our disposition of point of error number two, we need not address the first and third points of error. *See* TEX. R.APP. P. 90(a).

We affirm the trial court's judgment.

LAGARDE and JAMES, JJ., concurring and dissenting.

LAGARDE, Justice, concurring and dissenting.

I concur in the decision to grant the motion for rehearing and vacate this Court's opinion and judgment of March 21, 1994; however, I respectfully dissent on the merits. I would reverse and remand this case to the trial court.

On March 1, 1994 this Court, sitting en banc, reversed the trial court's summary judgment and remanded this case to the trial court. On March 16, 1994 appellee filed a motion for rehearing. While the motion for rehearing was pending, the Texas Supreme Court issued two opinions clarifying the application of the discovery rule. *See S.V. v. R.V.,* 933 S.W.2d 1 (Tex.1996); *Computer Assocs. Int'l v. Altai, Inc.,* 918 S.W.2d 453 (Tex.1996).

In *S.V.,* which is also a sexual abuse case, the supreme court purports to follow existing law on the discovery rule; however, it concedes that the justifications it has offered in the past for deferring accrual have been diverse, somewhat inconsistent, and often overly broad. *S.V.,* 933 S.W.2d at 5, 6. *S.V.* attempts to formulate a principle for applying the discovery rule that will make future decisions more consistent. *Id.* at 23. *S.V.* addressed the legal issue of the applicability of the discovery rule in the context of a directed verdict for the defendant. In *S.V.,* the supreme court made clear that for the discovery rule to apply, a plaintiff's claim must have been inherently undiscoverable within the limitations period and must be objectively verifiable. *Id.* at 8. The supreme court assumed without deciding that the plaintiff in *S.V.* could satisfy the inherent undiscoverability element. *Id.* Its focus was on the "objective verifiability" element, and it specifically addressed the question of whether there *can be* enough objective verification of "wrong and injury" in childhood sexual abuse cases to warrant application of the discovery rule. *Id.* In answering that question, the Court looked first at the facts of the case and then at the general nature of such cases. *Id.*

In *Computer Associates,* the supreme court focused on the required "inherent undiscoverability" element. *See Computer Assocs.,* 918 S.W.2d at 456–57. It did not reach the "objective verifiability" element. *See id.* at 458. *Computer Associates* involved the application of the discovery rule in a misap-

plication of trade secrets case. Procedurally, it was before the Texas Supreme Court on a certified question from the United States Court of Appeals for the Second Circuit, the federal district court having held that the action was barred by limitations after determining that the discovery rule exception did not apply. *Id.* at 454.

In light of the intervening decisions in *S.V.* and *Computer Associates* and the clarification they admittedly offer on application of the discovery rule, as well as the difficulty of the complex issues surrounding childhood sexual abuse and the devastating consequences to both the victim of the abuse and the accused, I would vacate this Court's opinion and judgment of March 21, 1994, and remand this case to the trial court for further development by the parties of the "facts of the case" and the trial court's reconsideration in light of those fully developed "facts of the case" and in light of *S.V.* and *Computer Associates.*

### The Teachings of S.V. and Computer Associates

#### Application of the Discovery Rule

In *S.V.,* the supreme court said: "[t]he Legislature did not intend for sexual abuse cases to be treated differently from any other case in applying the discovery rule." *See S.V.,* 933 S.W.2d at 22. Nor did the supreme court single out sexual abuse cases for special treatment. Instead, the supreme court teaches that the best approach is to apply the discovery rule in the same manner it was applied in *Computer Associates* and that it would be applied in any other case. *See id.* at 26.

For the discovery rule to apply, L.C.'s claim must have been inherently undiscoverable within the limitations period and objectively verifiable. *Id.* at 8. The determination of whether the discovery rule applies must be made on a case-by-case basis. *Id.* at 8.

### Inherent Undiscoverability

Has the movant-defendant A.D. conclusively proved by competent summary judgment evidence that the claimed injury is *not* inherently undiscoverable? I conclude he has not.

The requirement of inherent undiscoverability recognizes that the discovery rule exception should be permitted only in circumstances where "it is difficult for the injured party to learn of the negligent act or omission." *Computer Assocs.,* 918 S.W.2d at 456 (*citing Willis v. Maverick,* 760 S.W.2d 642, 645 (Tex.1988); *Kelley v. Rinkle,* 532 S.W.2d 947, 949 (Tex.1976)).

To be "inherently undiscoverable," an injury need not be absolutely impossible to discover. *S.V.,* 933 S.W.2d at 7. Nor does "inherently undiscoverable" mean merely that a particular plaintiff did not discover the claimed injury within the limitations period; discovery of a particular injury is dependent not solely on the nature of the injury but on the circumstances in which it occurred and plaintiff's diligence as well. *Id.* An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence. *Id.* (*citing Computer Assocs.,* 918 S.W.2d at 456).

Facts that might ordinarily require investigation likely may not excite suspicion where a fiduciary relationship is involved. *Willis v. Maverick,* 760 S.W.2d 642, 645–46 (Tex.1988). The fiduciary rationale is, in reality, a variation on the inherently undiscoverable element. *Computer Assocs.,* 918 S.W.2d at 456. Parents generally stand in the role of fiduciaries toward their children. *See Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex.1962).[1]

In *Thigpen,* the supreme court recognized that a confidential or fiduciary relationship "may arise informally from 'moral, social, domestic, or purely personal relationships'." *Id.* at 253. The existence of the fiduciary relationship is to be determined from the actualities of the relationship between the persons involved. *Id.* In the fiduciary context, such as a parent and child, the nature

---

1. Citing to *Thigpen* in *S.V.,* the supreme court stated, "parents generally stand in the role of fiduciaries *toward their minor children.*" *S.V.,*

933 S.W.2d at 8. My reading of *Thigpen* does not reveal a limitation to minor children. *See Thigpen,* 363 S.W.2d at 253.

of the injury is presumed to be inherently undiscoverable, although a person owed a fiduciary duty has some responsibility to ascertain when an injury occurs. *Computer Assocs.*, 918 S.W.2d at 456.

Based on the facts of this case and on the special relationship of father and daughter, I conclude that the nature of L.C.'s claimed injury is inherently undiscoverable. Furthermore, for reasons set forth later in this opinion, I conclude that L.C. fulfilled any responsibility she had to ascertain her claimed wrong and injury. Consequently, I conclude that A.D. has failed to conclusively negate by competent summary judgment evidence the inherently undiscoverable element required for application of the discovery rule. I turn now to the required objective verifiability element.

### Objective Verifiability

Objective verifiability is the element the supreme court focused on in reaching its conclusion the discovery rule did not apply in *S.V.* *See S.V.*, 933 S.W.2d at 17–20. It is important to note, however, the review in *S.V.* was in the context of a directed verdict. In *S.V.*, the supreme court stated "[t]he question is whether there *can be* enough objective verification of wrong and injury in childhood sexual abuse cases to warrant application of the discovery rule." *Id.* at 8. To answer the question, the supreme court looked at the facts of the case and at the general nature of such cases. *Id.* For purposes of applying the discovery rule, expert testimony on subjects about which there is no settled scientific view—indeed, not even a majority scientific view—cannot provide objective verification of abuse. *Id.* at 18.

Literature on repression and recovered memory syndrome establishes that fundamental theoretical and practical issues remain to be resolved. *Id.* at 19. Opinions in this area simply cannot meet the "objective verifiability" element for extending the discovery rule. *Id.* at 20.

Accepting the supreme court's discussion of the general nature of childhood sexual abuse cases, I will focus on the limited facts of the case before us in this summary judgment context to determine if A.D. has conclu-

sively negated this required element by competent summary judgment evidence.

I first note there is a stark contrast between the factual record before the court in *S.V.* and the factual record before us in this case. *Cf. id.* at 8–13. In *S.V.*, the court considered testimony of the accused father and the mother of the victim concerning their sex life, marital problems, and the victim's childhood years; it considered the victim's testimony, including her expressed interest in the subject of incest, which she expressed improvisationally in theater, in research, and in writing a term paper on father-daughter incest; it considered the victim's in-depth testimony about her feelings toward her father and her mother, her relationships with men, her anger, how her mother had told her she, the mother, had been sexually abused as a child and how she wrote about that in her diary; it considered the victim's testimony about her first image of incest that came to her in a dream about a faceless man, whom she did not recognize, forcing himself on a young girl; and it considered her testimony about the psychological problems she suffered. It also considered the testimony of three expert witnesses who testified that the victim suffered from post-traumatic stress disorder; however, the experts admitted that all of the victim's symptoms could have been caused by something other than child abuse; and it considered the father's denial that he ever abused the victim. *See id.*

In this case, we have before us only L.C.'s affidavit, portions of her deposition, and the uncontradicted affidavit of psychiatrist Gladys Beale–Ganzhorn. There is no denial by A.D. of the claimed abuse.

In *S.V.*, the supreme court said:

Although we indicated in *Robinson [v. Weaver*, 550 S.W.2d 18 (Tex. 1977)] that expert testimony would not alone provide the objective verification of a claim necessary to invoke the discovery rule, we have not held that such testimony can never suffice, at least in connection with other evidence, such as the symptoms of a survivor of abuse. We have held only that the bar of limitations cannot be lowered for no other reason than a swearing match be-

tween parties over facts and between experts over opinions. It is quite possible that recognized expert opinion on a particular subject would be so near consensus that, in conjunction with objective evidence not based entirely on the plaintiff's assertions, it could provide the kind of verification required.

*Id.* at 15.

In this case, the evidence presents no swearing match between the parties over facts or between experts over opinions. The summary judgment evidence before us in this case includes the following uncontradicted, sworn testimony from L.C. of her symptoms and behavioral traits:

> I was sexually abused by my father at age two and again when I was nine. As a direct result of these acts, I now suffer from major depression, borderline personality disorder, obsessive/compulsive behavior, anxiety, panic attacks, sleep disturbance, nightmares, flashbacks, and suicide ideation. I have attempted suicide. I have difficulty in forming healthy intimate relationships. I distrust others, and I often exhibit self-destructive behavior. I have phobias about sex and have experienced sexual dysfunction in various forms. I have suffered related physical health problems including compulsive eating disorder and obesity.

Additional summary judgment evidence includes the following uncontradicted, sworn testimony of psychiatrist Beale–Ganzhorn:

> I have diagnosed L. as suffering post-traumatic stress disorder. According to DSM–III, post-traumatic stress disorder (PTSD) is a mental injury that results when a patient has suffered a psychologically traumatic event which is outside the range of usual human experiences. Its symptoms include low self-esteem, self-hatred, difficulty in forming trusting relationships, dissociation, chronic depression, substance abuse, impulsive behavior, phobias, suicide attempts, repression of offending memories, avoidance of stimuli associated with the event, flashbacks and nightmares.

There is no conflicting expert opinion before us. There is no denial by A.D. There is no evidence that L.C.'s memories were influenced by the psychiatrist's views or that the psychiatrist's techniques to recover L.C.'s memories may have increased L.C.'s suggestibility. *Cf. S.V.*, 933 S.W.2d at 18, 19. There is no evidence that the psychiatrist misinterpreted L.C.'s memories. *Cf. id.* at 19. L.C.'s memories of the abuse by her father were vivid and specific. *Cf. id.* (plaintiff's dream involved a faceless man who never got a face). The summary judgment evidence before us does not show other possible influences on or sources of the plaintiff's recovered memories. *Cf. id.* (plaintiff's mother's detailing of her own abuse, plaintiff's independent research on incest, plaintiff's anger with her father, and the therapist's suggestive comment that the plaintiff's relationship with a boyfriend "sounded like incest" to her).

I conclude based on the facts of this case that A.D. has not conclusively shown by competent summary judgment evidence that the claimed wrong and injury cannot be objectively verified. At a minimum the facts give rise to equally reasonable, yet conflicting, conclusions; thus, a genuine issue of material fact exists. Summary judgment, therefore, is improper. I would so hold.

### Response to The Majority's Application of the Discovery Rule

The majority assumes without deciding that the discovery rule applies but concludes that A.D.'s summary judgment evidence conclusively established that by July 31, 1989, at the latest, L.C. had sufficient information regarding childhood sexual abuse that would have led a reasonably prudent person to make an inquiry *that would have led to the discovery of a cause of action.* Majority op. at 515. Accordingly, it further concludes that A.D. met his summary judgment burden of establishing that by July 31, 1989, L.C., through the exercise of reasonable diligence, should have been aware of the nature of her injuries. Thus, the majority says, the burden shifted to L.C. to present controverting evidence to raise a fact issue regarding discovery of her cause of action. Concluding that L.C. did not raise such a fact issue, the majority ultimately concludes that A.D. conclusively established as a matter of law that

L.C., through the exercise of reasonable diligence, should have discovered the nature of her injuries by July 31, 1989. Finding it unnecessary to address points of error one and three, the majority affirms.

### Summary Judgment Standard of Review

In the summary judgment context, when a plaintiff pleads the discovery rule, as L.C. did in this case, a defendant seeking summary judgment on the basis of limitations must prove when the cause of action accrued and must *negate the discovery rule* by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered or should have discovered the nature of the injury. *Burns v. Thomas,* 786 S.W.2d 266, 267 (Tex.1990). The supreme court has specifically declined to place this evidentiary burden on a party relying on the discovery rule. *Id.* at 267 n. 2 *(referring to Smith v. Knight,* 608 S.W.2d 165 (Tex.1980); *Stewart v. City of Austin,* 744 S.W.2d 682 (Tex. App.—Austin 1988, writ ref'd)).

The defendant in this case, therefore, must conclusively prove by competent summary judgment evidence that L.C. either discovered, or with the exercise of reasonable diligence, should have discovered the nature of her injury more than two years before suit was filed. In my view, the defendant has failed in his evidentiary burden. Assuming without deciding that the discovery rule applies, I would, in the alternative, hold that, at a minimum, a genuine issue of material fact exists on the issue of whether the plaintiff knew, or through the exercise of due diligence reasonably should have known, of her injury.

The evidence the majority relies on is the following: the fact that L.C. was seeking psychological counseling during the fall of 1988 into January 1989 from Dr. Gorsuch; L.C.'s awareness that some professionals generally attribute to incest physical and emotional symptoms similar to those she was experiencing; and suspicion purportedly aroused by routine questions by six other therapists about sexual abuse or incest. I cannot agree that such evidence conclusively proves L.C. should have known of her injury by July 31, 1989.

Unlike *S.V.,* which involved the review of a directed verdict, this case is before us for review of a summary judgment. Thus, the respective burdens of the parties differ.

In *S.V.,* the supreme court stated:

> If the question to be decided were whether [plaintiff] raised a material fact issue that she was entitled to have the jury resolve— *such as when she knew or reasonably should have known of the claimed abuse—* we would limit our consideration to the evidence in her favor and discard all contrary evidence and inferences.

*S.V.,* 933 S.W.2d at 8 (emphasis added) *(citing to Henderson v. Travelers Ins. Co.,* 544 S.W.2d 649, 650 (Tex.1976)).

In deciding that identical factual issue, the majority, while giving lip service to the appropriate standard, disregards the supreme court's admonition and *considers, not discards, all contrary evidence and inferences* in reaching its conclusion that the summary judgment evidence conclusively establishes as a matter of law that L.C. knew or reasonably should have known of the claimed abuse. In doing so, in my view, the majority errs.

By assuming the discovery rule applies, the majority necessarily assumes that plaintiff's injury was "by nature unlikely to be discovered within the prescribed limitations period *despite due diligence."* See *S.V.,* 933 S.W.2d at 7 *(citing Computer Assocs.,* ·918 S.W.2d at 456). Curiously, the majority then, in a perfunctory fashion, concludes first, that by July 31, 1989, L.C. had sufficient information to impose on her the duty to make an inquiry *that would have led to the discovery of a cause of action,* and second, that "the summary judgment evidence established as a matter of law that L.C. discovered or, through the exercise of reasonable diligence should have discovered, the nature of her injuries by July 31, 1989." In reaching its conclusions, the majority states, "L.C.'s evidence regarding the date she actually remembered A.D.'s acts is immaterial" *(citing Moreno,* 787 S.W.2d at 351 and *Willis,* 760 S.W.2d at 644). In concluding that L.C.'s actual memory is immaterial, the majority totally discards that portion of psychiatrist Beale–Ganzhorn's affidavit that states: "[a]ll-

though a patient may exhibit symptoms which suggest a certain etiology, *without clinical evidence of prior sexual abuse in the form of memories, no related diagnosis can be made for the patient.*" (Emphasis added.) This evidence is uncontroverted. Consequently, the majority must mean that L.C. should have discovered the claimed injury by means other than clinical diagnosis. Conspicuous by its absence from the majority's analysis is any suggestion *of whom* L.C. should have inquired or *how* such inquiry would have reasonably revealed the abuse. *Cf. Computer Assocs.*, 918 S.W.2d at 457 (suggesting *how* plaintiff could have detected the theft in reaching its conclusion that the injury of misapplication of trade secrets was not inherently undiscoverable). Furthermore, there is *no evidence* in the record to support the majority's conclusion that inquiry would have *led to the discovery of a cause of action.* The burden to prove that a diligent inquiry would have led to discovery of a cause of action is on the defendant-movant, not on the plaintiff. A.D.'s evidence is not sufficient to shift the burden to plaintiff to raise a fact issue. Even if it were, in my view, applying the correct standard of review, L.C. has raised a genuine issue of material fact.

Moreover, if the majority is correct that the factual record is conclusive as a matter of law that L.C. should have discovered the claimed injury, that conclusion should result in the ultimate conclusion that on the facts of this case the claimed injury was not inherently undiscoverable. Thus, the discovery rule would not apply.

Contrary to the express mandate of the supreme court, the majority discarded the following evidence favorable to L.C.: the abuse occurred after L.C.'s parents were separated and during L.C.'s visits with her father; the incident when she was nine occurred when L.C. was alone with her father in a remote lake cabin in Canada, her father having contrived to be alone with L.C. by dismissing the fishing guide and encouraging L.C.'s cousin and his friend to hike and explore the island; L.C.'s strained relationship with Dr. Gorsuch (and the reasonable inference that such strained relationship rendered productive therapy unlikely); Gorsuch did not tell L.C. that the problems she was having had to do with incest but only alluded to sexual abuse at least one time in the context of a general discussion about three other patients; vacillation and denial are symptomatic of incest; it is common for health care professionals to initially inquire about a history of childhood sexual abuse during the course of a patient's therapy and, most importantly in my view, expert testimony that "without clinical evidence of prior sexual abuse *in the form of memories,* no related diagnosis can be made for the patient." Without clinical evidence in the form of memories, no related diagnosis of L.C. could be made. L.C. had consulted at least six expert health professionals in an effort to discover the source of her symptoms. How much diligence does the majority believe is due? The evidence shows that A.D. contrived to commit the abuse under circumstances that insured there were no witnesses. Does the majority suggest that, upon inquiry by L.C. prior to her recovered memories, A.D. would have confessed to a crime committed decades ago under such circumstances? Common sense dictates otherwise. I am, therefore, at a loss to see how L.C. should reasonably have discovered the abuse before there was clinical evidence of the abuse in the form of her recovered memories.

I cannot agree that the movant-defendant has met his evidentiary burden. The burden never shifted to L.C. to raise a fact issue. Even if it did, I cannot join the majority's reliance on speculation, suspicion, suggestibility, and possibility as competent summary judgment proof conclusively establishing as a matter of law that L.C. reasonably should have discovered her wrong and injury at any time prior to her first memory of the abuse, i.e., prior to February 1, 1990. Limiting consideration to the evidence in L.C.'s favor and discarding all contrary evidence and inferences, as the supreme court dictates, at a minimum, the uncontroverted competent summary judgment evidence raises a genuine issue of material fact of when L.C. knew, or reasonably should have known, of the claimed abuse. In the alternative, I would so hold.

Finding no merit in A.D.'s ground for summary judgment that he is entitled to summary judgment because L.C. had no cause of action for the acts alleged in her petition, I would reverse and remand this case to the trial court for proceedings consistent with this opinion.